### In re Robert J. SPENLINHAUER, Appellant–Debtor.

### No. Civ. 98–446–P–C.

United States District Court, D. Maine.

March 8, 1999.

---

Gregory A. Tselikis, Bernstein, Shur, Sawyer & Nelson, Portland, Maine, for appellant Robert J. Spenlinhauer.

U. Charles Remmel II, Kelly, Remmel & Zimmerman, Portland, Maine, for appellee John & Stephen Spenlinhauer.

Stephen G. Morrell, Eaton, Peabody, Bradford & Veague, P.A., Brunswick, Maine, for Peter O'Donnell Trustee.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Robert J. Spenlinhauer, Appellant, appeals from an order entered by the bankruptcy court authorizing the sale of his interest in the JRS Realty Trust of Maine (the "JRS Trust") and the release of all the estate's claims against the JRS Trust interest purchasers that arose as a result of Appellant's interest in the JRS Trust. Before this Court, Appellant contends that: 1) the bankruptcy court's finding that the sale of the JRS Trust interest was in good faith is clearly erroneous because it was based entirely upon evidence not properly admitted and 2) the bankruptcy court improperly authorized a release of the estates's claims against the purchasers of the JRS Trust interest.

## I. BACKGROUND

### A. Parties and Transactions.

In 1979, the JRS Trust was settled by Appellant and his two brothers, John and Stephen Spenlinhauer. The three brothers were the trustees and the beneficiaries of the JRS Trust. Memorandum of Decision of Bankruptcy Court, May 16, 1995 ("Bankruptcy Court Decision") Record on Appeal No. 3 at 2. The sole business purpose of the JRS Trust was to maintain and lease certain real estate and buildings in the Wells Industrial Park in Wells, Maine from the Wells Industrial Development Corporation ("WIDC"). Id. By virtue of a sublease, the JRS Trust leased WIDC to a company called Spencer Press of Maine, Inc., a wholly owned subsidiary of Spencer Press, Inc., ("Spencer Press") owned by Appellant, his mother, his two brothers, and the Spenlinhauer Family Trust. See id. at 2 n. 2.

In 1988, Appellant sold his stock in Spencer Press and, thus, has had no controlling interest in Spencer Press since that time. See id. Appellant remained a beneficiary of the JRS Trust until September 28, 1990, when he filed a voluntary petition under Chapter 11. See id. Upon that bankruptcy filing, Appellant's beneficial interest in the JRS Trust became property of his bankruptcy estate pursuant to 11 U.S.C. § 541. When the Industrial Revenue Bonds ("IRBs") were refinanced in October 1995, the trustees of the JRS Trust and the directors of Spencer Press amended the sublease to give Spencer Press an option to extend the term of the lease. Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens, November 10, 1998, at 8. During the option term, Spencer Press would recover the cost of additional improvements it made to the premises through approximately $5,000,000 in rent credits. Id. The JRS Trust would receive reduced rent during the option term, but would own the premises and the improvements at the end of the term. See id. The bonds were refinanced a second time and some of the proceeds were used as working capital for Spencer Press. Id. at 8–9. On October 29, 1998, Appellant commenced an action in this Court against Spencer Press, the director of Spencer Press, and the trustees of the JRS Trust, alleging that the defendants violated the automatic stay by exercising control over property of the estate by effecting the refinancings of the premises and adversely impacting the rent due to the JRS Trust.

### B. Bankruptcy Court Proceedings and Order.

In October 1994, Appellant's Chapter 11 case was converted into a Chapter 7 proceeding. Id. at 1. On September 28, 1998, the Chapter 7 trustee moved the bankruptcy court for an order, pursuant to 11 U.S.C. § 363(b), authorizing the sale of the bankruptcy estate's interest in the JRS Trust, according to the terms and conditions of the purchase and sale agreement ("Sale Agreement") (Record on Appeal No. 8), to his

brothers, who, as mentioned above, are trustees and beneficiaries of the JRS Trust and own shares in Spencer Press. *See* Motion for Order Authorizing Trustee to Sell Property Free and Clear of Liens and Encumbrances (Record on Appeal No. 8). From this point forward, the Court will refer to John and Stephen Spenlinhauer as "the Purchasers." Under the terms of the Sale Agreement, the purchasers would acquire the JRS Trust interest, via a trustee's deed, for $500,000. *See id.* The Sale Agreement did not specifically mention that the trustee would release all claims against the Purchasers connected with the JRS Trust interest. *See* Sale Agreement.

On October 29, 1998, the same day that he filed his case in this Court regarding the refinancings of the Spencer Press sublease, Appellant filed a timely objection to the motion authorizing the sale of the interest in the JRS Trust. Former Debtor's Objection to Trustee's Motion for Order Authorizing Trustee to Sell Property Free and Clear of Liens and Encumbrances (Record on Appeal No. 12). The bankruptcy court held a telephonic hearing on the motion on November 3, 1998. The hearing was continued until 2:00 p.m. on November 10, 1998. After hearing arguments from counsel and considering a verified affidavit submitted by counsel for Spencer Press, Mr. Gordon C. Ayer ("Ayer Affidavit"), Bankruptcy Judge Haines authorized the sale of Appellant's interest in the JRS Trust to the purchasers, found that the sale was in good faith, and authorized a release of all of the estate's claims against the purchasers connected with the JRS Trust interest.

### 1. The Ayer Affidavit

It was during the hearing on November 10, 1998, that Appellant first learned of the Ayer Affidavit—which describing the lease amendments and the IRB refinancings in considerable detail. The Ayer Affidavit was delivered to the bankruptcy court on November 10, 1998, and to Appellant's counsel's office that morning via Federal Express. During the hearing, Appellant offered the following in response to the Ayer Affidavit:

Perkins: First, your Honor, I would say that we're at a bit of a disadvantage. We do not have the affidavit that's been mentioned. I suppose the mail—we could still get something late today, but as of this moment we have not seen this affidavit, so it is very difficult for me to address it in any fashion or to have submitted countering affidavits.

Remmel: Your Honor, I believe that affidavit is there. It was Federal Expressed for a.m. delivery.

....

Court: ... Go ahead, Mr. Perkins. I understand you haven't seen it anyway.

Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens, November 10, 1998, at 5–6. Counsel for the Appellant then proceeded to state his position and did not again mention the Ayer Affidavit.

### 2. Good Faith Sale

The bankruptcy court found that the acquisition of Appellant's JRS Trust interest by the Purchasers was made in good faith. In the November 10, 1998, hearing, Bankruptcy Judge Haines declared that, "[t]he only verified information I have before me is the information provided by Mr. Ayer's affidavit. Mr. Spenlinhauer [the Appellant] may not have had an opportunity, and I don't find one way or the other on this, to respond to Mr. Ayer's affidavit, but neither has Mr. Spenlinhauer put forward any sworn or attested statement in support of his personal allegations against the [trustee or the Purchasers]." *Id.* at 11. Bankruptcy Judge Haines explained, "I find based on Mr. Ayer's affidavit that they are indeed good-faith purchasers under Section 363(m)." *Id.* In its final order, the bankruptcy court ordered that "[a]t consummation of the sale to John and Stephen Spenlinhauer, they will be deemed purchasers of such property 'in good faith' within the meaning of § 363(m) of the Bankruptcy Code." Order Authorizing Trustee to Sell Property Free and Clear of Liens (Docket No. 14) at 2 ¶ f.

### 3. The Release of Claims

The Purchasers indicated at the first hearing conducted on November 3, 1998, that

they were seeking a release of any breach of fiduciary duty or other claims related to the lease amendment and IRB refinancings held by the trustee on behalf of the bankruptcy estate. The following colloquy took place at the first hearing:

> Court: Let me ask you this, . . . . Can this sale go forward with—I mean, I—it wouldn't have to be a formal reservation of rights. I mean, I didn't read it as there being any requirement in connection with the sale that there be mutual releases or any releases as between the trustee of the bankruptcy case and the purchasers.
>
> Ayer: Judge, we never asked for that.
>
> Court: Okay. So we could go—it can go forward without that?
>
> Ayer: Well, because of what's currently happening I kind of wish it wouldn't but I don't think that's particularly relevant. I mean, we have worked very diligently to make sure that the rent involved here has always been market rate.
>
> Court: Okay.
>
> Ayer: The refinancing has always been for the construction of additions.
>
> Court: Well, you're getting into the merits of it as opposed to whether or not you're insisting on a release, and the trustee can go forward and evaluate the trustee's interests for that, . . . .

Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens November 3, 1998, at 11–12. At this point, the bankruptcy court continued the hearing in order to give the bankruptcy estate trustee an opportunity to evaluate his potential claims. At the hearing held on November 10, 1998, counsel for the bankruptcy trustee informed the bankruptcy court that the Purchasers expected that "the Trustee will convey to them all of the estate's interests arising out of the beneficial interest in the JRS Trust, and that that means that we are not only going to convey the property but also any causes of action of rights in action that might arise out of that interest." Transcript of Continued Hearing on Motion to Sell Free and Clear of Liens, November 10, 1998, at 5. Counsel for the Purchasers stated that,

"we have indicated that we want to get a release. We don't think we did anything wrong. . . . But in a context where we're proposing to pay half a million to the estate, we certainly don't want to do that and then have the trustee turn around and sue us on some fiduciary duty. So we are asking for all the rights that the trustee has in relation to this JRS Realty Trust piece. . . . If the Court feels that requires some form of amendment to the application, I'm sure we could work with the trustee to do that."

*Id.* at 9–10. In setting forth its ruling, Bankruptcy Judge Haines concluded that, "it is appropriate that the trustee as trustee, and as the successor-in-interest to Robert Spenlinhauer's interest in the trust, sell, convey, and as necessary release all rights, title and interest to the trust that were formerly the debtor's and which are now the trustee's including any intangible rights that may attach to that." *Id.* at 12. Judge Haines further declared that the Appellant is free to waste as much time and money and energy as he chooses pursuing his personal claims but he is not free to waste the estate's time. *See id.*

## II. ANALYSIS

On appeal, the Appellant does not seek to block the sale of the JRS Trust interest to the Purchasers from going forward. Instead, Appellant asks the Court to vacate the bankruptcy court's finding that the sale of the JRS Trust interest to the Purchasers was made in good faith and to find that the bankruptcy court erred in authorizing a release of the estate's claims.

### A. The Ayer Affidavit and the Good Faith Finding.

■ Appellant contends that the Ayer Affidavit was filed in violation of the Federal Rules of Bankruptcy Procedure and the District of Maine Local Bankruptcy Rules. The Federal Rules require that affidavits filed in support of a motion be served with the motion. *See* Fed.R.Bankr.P. 9006(d). Under the Local Rules, a supporting affidavit may be "filed no later than one (1) business day in advance of the hearing" if the affidavit is not

available when the motion is filed. *See* D.Me. LBR 9013–2. The trustee filed the Motion for Order Authorizing Trustee to Sell Property Free and Clear of Liens and Encumbrances on approximately September 28, 1993 (Docket No. 8). The hearing on the motion was held on November 3, 1998, and was continued to November 10, 1998. Counsel for the Purchasers delivered the Ayer Affidavit to Appellant by Federal Express on the morning of November 10, 1998, and Appellant's counsel did not have the opportunity to examine the affidavit before the hearing on November 10, 1998. The Purchasers and the trustee do not dispute that they failed to deliver the affidavit with the motion or at least one day prior to the hearing. *See* Brief of Appellees (Docket No. 3) at 11–12. Furthermore, Bankruptcy Judge Haines stated in the November 10, 1998, hearing that Appellant had not been given an opportunity to review the affidavit prior to the hearing. *See* Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens, November 10, 1998, at 11. Thus, the Court finds that the counsel for the Purchasers failed to properly file the Ayer Affidavit.

■ Notwithstanding the Court's finding that the Ayer Affidavit was not properly filed, the Court finds that Appellant's counsel failed to properly object to its admission in the November 10, 1998, hearing. Under Fed.R.Bankr.P. 9017, the Federal Rules of Evidence apply in cases under the Bankruptcy Code. Pursuant to Fed.R.Evid. 103(a)(1), where a ruling which admits or excludes evidence is alleged to be erroneous there must be, "a timely objection or motion to strike ... stating the specific ground of objection, if the specific ground was not apparent from the context." Here, counsel for Appellant merely informed the bankruptcy court that he had not yet seen the affidavit and was, thus, at a disadvantage. *See* Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens, November 10, 1998, at 5–6. He did not communicate to the bankruptcy court that he wanted the Ayer Affidavit excluded from the record.

Appellant's counsel's statement regarding the Ayer Affidavit is susceptible of meaning that, although he had not had an opportunity to look at the affidavit and was at a disadvantage, he wished to continue and, thus, to waive any objection to the late filing of the Ayer Affidavit. When counsel spoke again, he began his argument with "nonetheless," indicating that he chose to proceed rather than to object to the admission of the Ayer Affidavit. *See id.* at 6. Appellant contends that because he stated the grounds for his objection, he adequately objected. However, the Court finds that Appellant did not clearly indicate that he objected to the admission of the Ayer Affidavit on any grounds. To tell the bankruptcy court that he is at a disadvantage because he had not yet seen the affidavit is not sufficient to constitute an objection. That formulation does not call definitely to the attention of the judicial officer that he or she is asked to rule on a contested point. As the Purchasers point out, had counsel clearly objected to the admission of the Ayer Affidavit, the bankruptcy court could have continued the hearing. The bankruptcy court could reasonably conclude, from what Appellant's counsel stated, that counsel for the Appellant wished to continue with the hearing regardless of the fact that he had not yet seen the Ayer Affidavit. Because counsel for Appellant did not clearly set forth his objection or its grounds to the admission of the Ayer Affidavit, the issue was not preserved for appeal.

■ The Court must determine whether the bankruptcy court's finding that the Purchasers of the JRS Trust interest were in good faith or whether that conclusion is unsupported by the record and clearly erroneous. Having determined that the Ayer Affidavit was properly considered by the bankruptcy court, the Court concludes that the bankruptcy court's finding that the Purchasers bought the JRS Trust interest in good faith is supported by the record and is not clearly erroneous. In his affidavit, Mr. Ayer attests that in regard to all of the refinancing and lease transactions between JRS Trust and Simon Press in 1994, 1995, and 1996, significant efforts were made to insure that all interested parties were aware of the circumstances and details involved. *See* Ayer Affidavit at 9 ¶ 17. Appropriate notice of meetings of the trustees

of the JRS Trust were provided to individuals or entities having a legitimate interest therein, including Appellant. *See id.* In addition, Mr. Ayer explains the refinancing and lease transactions between JRS Trust and Simon Press in detail and provides evidence that they were conducted in good faith and in the best interest of JRS Trust. *See id.* at 4–9. Finally, Mr. Ayer states that he met with representatives of Arthur Anderson, LLP, to appraise the premises and provide direction with regard to the bankruptcy estate's interest in the JRS Trust. *See id.* at 10 ¶ 18. In addition, the affidavit shows that Mr. Ayer met with a certified public accounting firm, Parent, Naffah & Co., to obtain their opinion as to the accuracy of the appraisal. *See id.* ¶ 19. In contrast, Appellant did not present any sworn or attested statements in support of his personal allegations that the Purchasers did not purchase the JRS Trust interest in good faith. *See* Transcript at 11. The foregoing is sufficient evidence upon which the bankruptcy court premised its finding that the Purchasers acquired the JRS Trust in good faith and were good-faith purchasers. Accordingly, the Court finds that the bankruptcy court's finding that the Purchasers were good faith purchasers of the JRS Trust interest is supported by the evidence submitted at the hearing and is not clearly erroneous.

## B. The Release of Claims.

Appellant asks this Court to find that the bankruptcy court erred in authorizing the trustee to execute and deliver a release of all claims relating to the JRS Trust interest to the Purchasers. Specifically, he contends that the order allowing the trustee to deliver a release was procedurally flawed because the release was a change in the terms of the sale of the JRS Trust interest and the notice required under D.Me. LBR 6004–1(c) was not provided. Appellant also argues that the bankruptcy court failed to provide any plausible justification for denying him the opportunity to pursue his claims against the Purchasers for the alleged devaluation of the JRS Trust interest that occurred during the refinancings and changes in the sublease with Spencer Press prior to the sale of his interest.

■ Appellees disagree with the contention that notice was required under D.Me. LBR 6004–1(c) regarding the release of claims. They assert that the estate was selling the entire interest in the JRS Trust and that any claims that the estate may have against the Purchasers are inextricably linked to the JRS Trust interest and released once the interest is sold. Accordingly, Appellees argue that the Sale Agreement automatically, although not explicitly, included a release of claims and that, in requesting that the bankruptcy court authorize a release of the estate's claims, they asked only that the bankruptcy court confirm the original terms of the sale. The hearing transcripts demonstrate that the Sale Agreement did not contain a release of claims and that the parties did not believe that it did. In the November 3, 1998, hearing, the bankruptcy court stated that it did not read the Sale Agreement as including a release of claims connected to the JRS Trust interest. *See* Transcript of Continued Hearing On Motion to Sell Free and Clear of Liens November 3, 1998, at 11–12. Furthermore, counsel for the bankruptcy trustee and the Purchasers argued for a release of claims in the November 10, 1998, hearing. Transcript of Continued Hearing on Motion to Sell Free and Clear of Liens, November 10, 1998, at 9–10. Thus, the Court finds that the Sale Agreement did not provide that a release of claims was a condition of the sale of the JRS Trust interest.

Appellees also are mistaken that a release of the estate's claims regarding the JRS Trust interest is inextricably interwoven with the interest itself. Drawing an analogy to principles of corporate law in shareholder derivative suits, the Appellees assert that once the interest in the trust is sold, any claims connected to such an interest are released. However, Appellant is not seeking to bring a claim on behalf of the JRS Trust as in derivative litigation where a shareholder brings a claim on behalf of the corporation. Appellant seeks to preserve claims against the Purchasers for an alleged breach of a duty that runs to him personally. His claims are not derivative, but are direct claims that

assert injury to himself. As long as he has standing, he may bring claims against the Purchasers for actions that occurred prior to the sale of his interest in the JRS Trust. He had a personal interest in the preservation of the Trust interest and in maximizing the funds available to reduce nondischargeable debts. His right to sue for injury to this interest is not automatically lost once the trust interest is sold. Therefore, the Court finds that a release of claims is not inextricably linked with Appellant's interest in the JRS Trust. Despite these findings, the Court does not decide here whether the notice requirements under D.Me. LBR 6004–1(c) regarding the release of claims as part of the sale of JRS Trust interest applied and, if so, whether they were met under the circumstances of this case.

 Instead, the Court orders that the issue of whether the bankruptcy court properly authorized a release of claims as part of the sale be remanded to the bankruptcy court for a hearing on whether the release is proper in light of Appellant's standing to pursue his claims after the estate has released them. The bankruptcy trustee has exclusive standing to assert the estate's legal claims. *See Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984). Appellant has potential standing to pursue his personal claims against the Purchasers only if the bankruptcy trustee abandons them. *See id.* at 131–32; 11 U.S.C. § 554. If, as the bankruptcy court has authorized, the trustee releases those claims, Appellant faces significant standing problems in pursuing the estate's claims in other pending litigation.

 Appellant contends that there is no plausible justification for denying him the ability to prosecute the estate's claims against the Purchaser. It is unclear from the record whether or not the bankruptcy court considered the effect that authorizing a release of claims would have on Appellant's standing to pursue the same claims in his own interest.[1] The transcript of the hearing indicates that the bankruptcy court assumed that Appellant could continue to pursue the claims against the Purchasers on his own behalf after the sale of the JRS Trust interest and the release. *See* Transcript of Continued Hearing on Motion to Sell Free and Clear of Liens, November 10, 1998, at 12. The bankruptcy court found it unnecessary to request an offer of proof regarding whether Appellant would have standing to pursue his claims. *See id.* at 10. Furthermore, the bankruptcy court did not state the authority upon which it authorized the release even though it was not provided for in the original Sales Agreement.

The Court finds that the release of claims raises serious questions as to whether Appellant has standing to pursue those claims where the trustee, who has exclusive standing to pursue those claims on behalf of the estate, releases them rather than abandons them to the former debtor. The Court concludes, therefore, that the bankruptcy court did not adequately consider the issue of Appellant's standing to pursue his claims when it authorized the release of the claims by the trustee. Accordingly, the Court remands this issue to the bankruptcy court to determine whether the bankruptcy court has authority to authorize a release of claims under these circumstances, whether such a release is proper in light of the potential standing problems, and whether the trustee has already abandoned the claims.[2]

1. Appellees argue that the bankruptcy court exercised its authority pursuant to 11 U.S.C. § 363(e) by conditioning the sale of the JRS Trust interest on a lease. Under section 363(e), a bankruptcy court may condition the sale of estate property to provide adequate protection to the creditors. *See* 11 U.S.C. § 363(e). Appellees assert that the bankruptcy court conditioned the sale on a release of claims because it found that Appellant was subjecting the Purchasers to claims in order to jeopardize a sale that was for the benefit of creditors. The Court will not now decide whether the bankruptcy court was authorized to approve the release according to this theory under section 363(e). It is not clear that the bankruptcy court considered its powers under section 363(e) because the section is nowhere mentioned in the final order or hearing transcript. The Court will not assume that the bankruptcy court considered that it was acting under its authority pursuant to section 363(e).

2. Appellees argue that the Appellant failed to preserve his objection to the release on the grounds that notice to creditors were not given regarding a material change in the terms of the

### III. CONCLUSION

The Court **ORDERS** that the bankruptcy court's finding that the Purchasers are purchasers of the JRS Trust interest in good faith be, and it hereby is, **AFFIRMED.** The Court **FURTHER ORDERS** that the case be **REMANDED** to the bankruptcy court to hold a hearing to determine those issues specified in the remand and any other issues relevant thereto.

So **ORDERED.**

sale. Because the Court ultimately finds that the bankruptcy court did not adequately ascertain whether a release is proper under these circumstances, the Court will not now address Appellees' argument regarding the adequacy of Appellant's objection.