# United States Court of Appeals
## For the First Circuit

No. 00-1427

ROBERT J. SPENLINHAUER, DEBTOR,

Plaintiff, Appellant,

v.

JOSEPH V. O'DONNELL, TRUSTEE IN BANKRUPTCY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Anthony E. Perkins, with whom Michael A. Fagone and Bernstein, Shur, Sawyer & Nelson were on brief for appellant.
U. Charles Remmell, II, with whom Kelly, Remmell & Zimmerman, Stephen Morrell, and Eaton, Peabody, Bradford & Veague were on brief for appellee.

August 20, 2001

**CYR, Senior Circuit Judge.** Chapter 7 debtor Robert J. Spenlinhauer appeals from a district court order which affirmed a bankruptcy court ruling authorizing the chapter 7 trustee to sell certain property of the chapter 7 estate to the estranged siblings of the chapter 7 debtor. We dismiss the appeal due to lack of jurisdiction.

## I

## BACKGROUND

The chapter 7 debtor and his two brothers established the JRS Trust in 1979 for the purpose of leasing certain real estate situated in Wells, Maine.[1] When Robert Spenlinhauer filed a voluntary chapter 11 petition in 1990, his one-third beneficial interest in the JRS Trust became property of the chapter 11 estate by operation of law. The case was converted to a chapter 7 liquidation proceeding in 1994, whereupon the appellee became the chapter 7 trustee. Beginning in 1995, the trustees of the JRS Trust — viz., debtor's brothers, John and Stephen, and the chapter 7 trustee — renegotiated the terms of a sublease which the JRS Trust had entered into with Spencer

---

[1]We recite only the record facts directly pertinent to the determinative jurisdictional issue. For greater background detail, see In re Spenlinhauer, 231 B.R. 429 (D. Me. 1999).

Press, a company controlled by the Spenlinhauer family.[2]

In 1998, the chapter 7 trustee filed a notice of sale with the bankruptcy court, see Bankruptcy Code § 363; 11 U.S.C. § 363, proposing to sell the chapter 7 estate's one-third beneficial interest in the JRS Trust to John and Stephen Spenlinhauer [hereinafter: "Purchasers"] for $500,000. The notice of sale did not expressly provide that the chapter 7 trustee would also release the Purchasers from any potential liability, either to the chapter 7 estate or to the chapter 7 debtor, arising from the Purchasers' pre-sale administration of the JRS Trust.

The chapter 7 debtor then brought suit in federal district court against Spencer Press and the JRS Trust trustees, claiming that their sublease renegotiations were conducted in violation of the automatic stay provisions. See Bankruptcy Code § 362(a)(3); 11 U.S.C. § 362(a)(3). Simultaneously, in the pending bankruptcy court proceeding, the chapter 7 debtor objected to the proposed sale, contending that the sublease renegotiations conducted by the Purchasers violated the automatic stay, breached their fiduciary duties as trustees of the JRS Trust, and seriously devalued the chapter 7 debtor's

---

[2]By 1988, the chapter 7 debtor, Robert Spenlinhauer, had sold all his stock in Spencer Press.

interest in the JRS Trust, thereby rendering the proposed $500,000 sale price inadequate.

On November 3, 1998, the bankruptcy court conducted a telephonic hearing on the chapter 7 trustee's section 363 notice of sale, during which the chapter 7 debtor contended that his causes of action against the Purchasers for allegedly violating the automatic stay and breaching their fiduciary duties should not be included in the sale proposed by the chapter 7 trustee, since these assets were distinct from his one-third beneficial interest in the JRS Trust. The chapter 7 trustee responded that these causes of action were of questionable merit and value, and, in any event, that his sale of the underlying trust interest to the Purchasers might, by necessary implication, release the Purchasers from the claims asserted by the chapter 7 debtor. The Purchasers informed the bankruptcy court that though they had not requested a release of claims from the chapter 7 trustee as part of the proposed sale, they nonetheless preferred a release, given the chapter 7 debtor's litigation posture. After observing that the notice of the proposed sale contained no release of claims, the bankruptcy court continued the telephonic hearing for one week in order to permit the chapter 7 trustee to reevaluate "all the facts and circumstances of the sale."

5

On November 10, the day the hearing resumed, the Purchasers submitted the affidavit of Gordon C. Ayer, Esq. ("Ayer Affidavit"), in-house-counsel to Spencer Press, describing in detail the sublease renegotiations conducted in 1995 between Spencer Press and the JRS Trust. During the reconvened hearing, counsel to the chapter 7 debtor informed the bankruptcy court that he was "at a bit of a disadvantage" because he had not yet received the Ayer Affidavit, thus it was "very difficult . . . to address it in any fashion or to have submitted countering affidavits." In addition, the Purchasers stated that a release of all claims must be part of the consideration for their purchase.

In light of the chapter 7 debtor's failure to adduce evidence that there had been any violation of the automatic stay or breach of fiduciary duty by the chapter 7 trustee, the bankruptcy court announced that it would approve the sale of the chapter 7 estate's interest in the JRS Trust, as well as the release of any potential causes of action against the Purchasers arising from their pre-sale administration of the JRS Trust. Thus, the court held that the Purchasers had purchased "in good faith," within the meaning of Bankruptcy Code § 363(m), 11 U.S.C. § 363(m).

Subsection 363(m) provides that "[t]he reversal or

modification on appeal of a[] [bankruptcy court's] authorization . . . of a sale . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith . . . unless such authorization and such sale . . . were stayed pending appeal."[3]  Prior to hearing from counsel to the chapter 7 debtor,  the bankruptcy court announced its intention to deny any motion for stay.  Whereupon counsel to the chapter 7 debtor interjected:  "[B]y not asking for [a stay], we are not giving up our rights to appeal."

In due course, the chapter 7 debtor appealed to the district court.  The district court upheld the determination that the Purchasers were purchasers "in good faith" under subsection 363(m), but remanded to the bankruptcy court to reevaluate whether the terms of the sale fairly encompassed a release of the chapter 7 debtor's putative causes of action against the Purchasers.  In re Spenlinhauer, 231 B.R. 429 (D. Me. 1999).

Following the remand, after yet another hearing, the

---

[3]Subsection 363(m) is designed to ensure that a "good faith" purchaser, or "one who buys property in good faith and for value, without knowledge of adverse claims," In re Mark Bell Furniture Warehouse, Inc. (Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs.), 992 F.2d 7, 8 (1st Cir. 1993), justifiably may rely on the finality of the sale.  See In re Healthco Int'l, Inc. (Hicks, Muse & Co. v. Brandt), 136 F.3d 45, 49 (1st Cir. 1998) (noting that § 363(m)'s guarantee of finality promotes optimal prices for estate assets).

bankruptcy court ruled that it could not undertake further inquiry into the scope of the sale since the district court had upheld the Purchasers' "good faith" status on appeal, and consequently subsection 363(m) precluded any reassessment of the terms of the sale consummated on November 10, 1998. The chapter 7 debtor once again appealed to the district court, which adopted the bankruptcy court's rationale on remand, and affirmed. In re Spenlinhauer, No. 99-364, 2000 WL 760745 (D. Me. Feb. 18, 2000).

## II

## DISCUSSION

The chapter 7 debtor urges us to reverse the November 10, 1998, order confirming the sale, for the following reasons, among others: (1) the chapter 7 trustee concededly failed to follow the local bankruptcy court rule which requires the parties to submit their supporting affidavits not later than one business day prior to a hearing; thus, the bankruptcy court abused its discretion (i) by relying on the pivotal Ayer Affidavit as evidence of the Purchasers' "good faith," and (ii) by denying the chapter 7 debtor's requests for additional discovery or for an evidentiary hearing aimed at countering the deleterious evidence presented in the Ayer Affidavit; and (2) on remand from the district court, the bankruptcy court erroneously

8

ruled that subsection 363(m) precluded its reassessment regarding whether the November 10, 1998, sale encompassed the release of claims, since the finality provisions in subsection 363(m) pertain strictly to sales of property (e.g., the chapter 7 estate's one-third interest in the JRS Trust), not to the chapter 7 estate's settlement or relinquishment of causes of action acquired by the chapter 7 estate.

On appeal from a district court decision reviewing a bankruptcy court order, we review the bankruptcy court order directly, disturbing its factual findings only if clearly erroneous, while according de novo review to its conclusions of law. In re Stoehr (Stoehr v. Mohamed), 244 F.3d 206, 207-08 (1st Cir. 2001) (per curiam). Moreover, we may affirm the bankruptcy court order on any ground apparent from the record on appeal. See In re Rauh (Noonan v. Rauh), 119 F.3d 46, 53-54 (1st Cir. 1997). Before we address the substantive claims advanced on appeal, however, we must determine our appellate jurisdiction.

Under the Bankruptcy Code, standing to appeal from a final bankruptcy court order is accorded only to a "person aggrieved." See In re Thompson (Kowal v. Malkemus), 965 F.2d 1136, 1142 n.9 (1st Cir. 1992). The "person aggrieved" paradigm, which delimits appellate jurisdiction even more

9

stringently than the doctrine of Article III standing, see,
e.g., In re Alpex Computer Corp. (Nintendo Co. v. Patten), 71
F.3d 353, 357 n.6 (10th Cir. 1995); In re H.K. Porter Co.
(Travelers Ins. Co. v. H.K. Porter Co.), 45 F.3d 737, 741 (3d
Cir. 1995),[4] bestows standing only where the challenged order
directly and adversely affects an appellant's pecuniary
interests. In re Thompson, 965 F.2d at 1142 n.9.

The advent of the chapter 7 estate and the appointment
of the chapter 7 trustee divest the chapter 7 debtor of all
right, title and interest in nonexempt property of the estate at
the commencement of the case. See Bankruptcy Code §§ 541(a),
704; 11 U.S.C. §§ 541(a), 704.[5] Since title to property of the

---

[4]The principal policy underlying the heightened "standing"
requirement is that bankruptcy proceedings — often
administratively and procedurally unwieldy — not be prolonged by
unnecessary appeals. In re Thompson, 965 F.2d at 1145-46; In re
Colony Hill Assocs. (Kabro Assocs. of W. Islip v. Colony Hill
Assocs.), 111 F.3d 269, 273 (2d Cir. 1997); In re Andreuccetti,
975 F.2d 413, 416-17 (7th Cir. 1992).

[5]Neither party disputes that the debtor's putative causes of
action against the Purchasers, for violation of the automatic
stay and breach of fiduciary duty, constitute property of the
chapter 7 estate, and that a release of those claims was
amenable to disposition by the chapter 7 trustee. See, e.g., In
re Acton Foodservices Corp., 39 B.R. 70, 72 (Bankr. D. Mass.
1984) (holding that potential causes of action became property
of the chapter 7 estate even though they arose postpetition,
since any legal or equitable rights of the debtor in the
underlying real property from which those causes of action
derived had become property of the chapter 7 estate before the
causes of action accrued) (citing 11 U.S.C. § 541(a)(7)); see
also In re Doemling, 116 B.R. 48, 50 (Bankr. W.D. Pa. 1990).

estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.  See In re El San Juan Hotel, 809 F.2d 151, 154-55 (1st Cir. 1987); see also In re Cult Awareness Network, Inc. (Cult Awareness Network, Inc. v. Martino), 151 F.3d 605, 607 (7th Cir. 1998); In re Richman (Richman v. First Woman's Bank), 104 F.3d 654, 657 (4th Cir. 1997).  Thus, normally it is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing to appeal from bankruptcy court orders which confirm or reject sales of property of the estate.  See In re Mark Bell Furniture Warehouse, Inc. (Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs.), 992 F.2d 7, 10 (1st Cir. 1993); In re Eisen (Moneymaker v. CoBen), 31 F.3d 1447, 1451 n.2 (9th Cir. 1994).

In the normal course, therefore, the bankruptcy or district courts must make the required "person aggrieved" determination in the first instance, which entails a factual inquiry which we review only for clear error.  See In re El San Juan Hotel, 809 F.2d at 154 n.3; In re Parker (McClellan Fed. Credit Union v. Parker), 139 F.3d 668, 670 (9th Cir. 1998).  But where, as here, the lower court has not undertaken the required "standing" inquiry, we must do so, ab initio, on our own initiative. See In re Mark Bell Furniture, 992 F.2d at 9; In re

11

<u>Dein Host, Inc.</u>, 835 F.2d 402, 404 (1st Cir. 1987). Moreover, provided the appellate record discloses the requisite facts, we may address the matter without remanding. See <u>In re Parker</u>, 139 F.3d at 670; <u>In re American Ready Mix, Inc.</u> (<u>Lopez</u> v. <u>Behles</u>), 14 F.3d 1497, 1499-1500 (10th Cir. 1994) (noting also that parties may neither waive nor stipulate to "standing"). As in other jurisdictional contexts, of course, the party asserting appellate jurisdiction — here, the chapter 7 debtor — bears the burden. See <u>In re Depoister</u> (<u>Depoister</u> v. <u>Mary M. Holloway Found.</u>), 36 F.3d 582, 585 (7th Cir. 1994); <u>In re Willemain</u> (<u>Willemain</u> v. <u>Kivitz</u>), 764 F.2d 1019, 1023 (4th Cir. 1985); <u>In re Cosmopolitan Aviation Corp.</u> (<u>Cosmopolitan Aviation Corp.</u> v. <u>New York State Dep't of Transp.</u>), 763 F.2d 507, 513 (2d Cir. 1985); <u>In re Alfaro</u> (<u>Alfaro</u> v. <u>Vazquez</u>), 221 B.R. 927, 931-32 (B.A.P. 1st Cir. 1998).[6]

Therefore, when the chapter 7 debtor appeals from an order authorizing a sale of property of the estate, he must adduce sufficient evidence to demonstrate that the challenged order directly and adversely affects the chapter 7 debtor's pecuniary interests, notwithstanding the fact that he no longer

---

[6]At the November 10, 1998, hearing, the bankruptcy judge mistakenly observed: "I could take an offer of proof from the <u>trustee</u> regarding the standing issue," but "I'm not going to address that issue today." (Emphasis added.)

12

has title to the property. The chapter 7 debtor may establish standing by demonstrating, <u>inter alia</u>, that nullification of the sale is likely to result in an overall surplus in the chapter 7 estate — <u>viz.</u>, a total nonexempt-asset valuation exceeding all allowed claims against the chapter 7 estate — to which the debtor, <u>qua individual</u>, would become entitled once the bankruptcy case is closed, <u>see</u>, <u>e.g.</u>, <u>In re Cundiff</u> (<u>Cundiff</u> v. <u>Cundiff</u>), 227 B.R. 476, 478 (B.A.P. 6th Cir. 1998) (citing 11 U.S.C. § 554(c), noting that all unadministered chapter 7 estate property revests in the individual debtor at close of bankruptcy case). <u>See</u> <u>In re Thompson</u>, 965 F.2d at 1143 n.12; <u>see</u> <u>also</u> <u>In re McGuirl</u> (<u>McGuirl</u> v. <u>White</u>), 86 F.3d 1232, 1234 (D.C. Cir. 1996); <u>In re Willemain</u>, 764 F.2d at 1022.[7] The record on appeal discloses no indication that the chapter 7 debtor ever attempted to sustain his burden on "standing."

At the November 3, 1998, hearing, the bankruptcy judge

---

[7]In addition, a debtor may demonstrate standing by establishing that a proposed sale of property would adversely affect the terms and conditions of his chapter 7 discharge. <u>See</u> <u>In re Thompson</u>, 965 F.2d at 1143 n.12. However, this consideration is not pertinent to the present appeal, which involves simply a putative debt due the debtor by the Purchasers. Further, although the chapter 7 debtor asked the chapter 7 trustee to relinquish these causes of action to him (<u>viz.</u>, abandon them), he did not offer to purchase the releases from the chapter 7 trustee. Hence, the chapter 7 debtor has no conceivable claim to "standing" as an unsuccessful bidder. <u>See</u> <u>Mark Bell Furniture</u>, 992 F.2d at 10.

immediately raised the "standing" issue <u>sua</u> <u>sponte</u>. Twice the chapter 7 trustee was asked: "[W]hat will the impact of the sale at this [$500,000] price be in terms of [a] dividend to nonpriority unsecured creditors?" The chapter 7 trustee responded that though he had yet to calculate the exact liabilities, he "anticipat[ed] a fairly strong dividend to unsecured creditors." The bankruptcy judge then inquired whether a sale at $727,000, the estimated maximum fair market value, would "generate a surplus for distribution to the debtor?" The chapter 7 trustee responded that though he had anticipated that the "standing" issue would arise at the hearing, the burden was upon the chapter 7 debtor, who neither alleged "standing" nor adduced any evidence that the proposed sale to the Purchasers would adversely affect his pecuniary interests (<u>viz.</u>, deny the chapter 7 estate a potential surplus).

Instead of disputing the procedural deficiency noted by the chapter 7 trustee, the chapter 7 debtor merely mustered the conclusory statement that, but for the $500,000 sale to the Purchasers, "it is very likely that we would have created value that would have devolved to [the chapter 7 debtor]." At no point did the chapter 7 debtor proffer evidentiary support for this supposition, nor tender a counter-appraisal showing that the one-third JRS Trust interest (whether or not coupled with a

14

release of claims) currently was worth more than $500,000, let alone $727,000. Similarly, the chapter 7 debtor offered no evidence as to how, or by what amount, the Purchasers' 1995 sublease renegotiations reduced the value of the JRS Trust (hence the value of the chapter 7 debtor's interest in it).

Furthermore, rather than attempting to approximate the alleged monetary loss, the chapter 7 debtor conjectured: "I've got to believe that the Arthur Anderson appraisal [viz., the appraisal adduced by appellees], if it had been done on the original [viz., the pre-sublease-renegotiation] picture, would be significantly higher." (Emphasis added.) Finally, the chapter 7 debtor neither attempted to adduce evidence as to the total unsecured liabilities of the chapter 7 estate, nor suggested that any such calculation (or reasonable approximation) would be infeasible in the circumstances. Cf. In re Depoister, 36 F.3d at 585 (appellate court may consider debtor's own calculations regarding assets versus liabilities in arriving at its sua sponte "standing" determination).[8]

The bankruptcy judge noted that there "would [be]

_____

[8]At the November 10, 1998 hearing, the bankruptcy judge noted that even assuming the chapter 7 debtor had not had an opportunity to review the Ayer Affidavit before the hearing, "neither has [the chapter 7 debtor] put forward any sworn or attested statement in support of his personal allegations against . . . his brothers."

15

standing concerns" were the case before the district court for trial of the chapter 7 debtor's parallel litigation against the Purchasers, see supra Section I,[9] but ceased further inquiry into the "standing" issue as it relates to the chapter 7 debtor's challenge to the sale. Moreover, at the November 10, 1998, hearing, the chapter 7 trustee informed the bankruptcy court that investigation had disclosed that "there is virtually no prospect for any surplus to the debtor." Still, the chapter 7 debtor offered no response. Thus, by November 10, 1998, the day the bankruptcy judge concluded the continued telephonic hearing, the record contained no competent evidence of "standing" on the part of the chapter 7 debtor.

Whatever omission or confusion may have been engendered by any ruling below, however, it remains incumbent upon us to address the "standing" issue sua sponte, based on the existing appellate record, which plainly demonstrates that the chapter 7 debtor utterly failed to establish the requisite "standing" to appeal. See In re Rauh, 119 F.3d at 53.[10]

---

[9]The bankruptcy judge noted as well that if the chapter 7 debtor's claims for breach of fiduciary duty and violation of the automatic stay had any substance, "they certainly would or could . . . redound to the benefit of the estate rather than [the chapter 7 debtor] personally."

[10]Nonetheless, appellee is admonished for failing to adhere to Federal Rule of Appellate Procedure 28(a)(7) & (b), which mandates that appellee briefs include pertinent citations to the

**Appeal dismissed.**

---

appellate record, <u>supporting</u> <u>all</u> <u>factual</u> <u>statements</u>. The Federal Rules of Appellate Procedure are not optional. Fortunately for the appellee, our disposition has not depended upon his inadequately supported factual recitations.