Roland L. BEAULAC, Debtor.

Roland L. Beaulac, Appellant,

v.

Tali A. Tomsic, Chapter 7 Trustee, and David Perry, Appellees.

BAP No. MW 02–092.
Bankruptcy No. 99–40131–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

July 2, 2003.

**816**

Steven A. Kressler, Worsester, MA, James P. Ehrhard, South Bend, IN, on brief for Appellant.

Herbert Weinberg, North Andover, MA, Jason Rosenberg, Andover, MA, on brief for Appellees.

Before LAMOUTTE, HAINES, and VAUGHN, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

Before the panel is Chapter 7 debtor Roland L. Beaulac's appeal of the bankruptcy court's order, entered December 10, 2002, approving an amended stipulation of settlement between the Chapter 7 trustee, Mr. David Perry, and others. We affirm the bankruptcy court's order today, and do so without extensive elaboration. Beaulac's appeal advances arguments he failed to make below. Thus, he has waived them. In any event, we note that his arguments lack convincing force and he lacks standing.

## Background

Roland Beaulac filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code[1] on January 7, 1999. His schedules revealed assets valued at $745,024 and liabilities of $1,198,506.60. On November 23, 1999, the case was converted from Chapter 11 to Chapter 7. Tali A. Tomsic was appointed Chapter 7 trustee on November 30, 1999. In January 2001, Beaulac filed schedules for Chapter 7. They disclosed total assets of $1,045,471 and total liabilities of $1,529,639.78.

Mr. Beaulac's affairs were somewhat complex, mostly in ways we need not examine here. However, among the assets listed in the Chapter 7 schedules was Beaulac's purported ownership of 25 shares of stock in Can–Am of Webster, Inc., represented to be of "unknown" value. Investigation determined that Beaulac had controlled the affairs of Can–Am since 1989. He had either purchased control of 48 shares, or the shares themselves, from other shareholders of Can–Am that year.[2]

David Perry, who claimed to hold 27 shares of Can–Am stock, contended, among other things, that Beaulac had seized corporate control in contravention of Can–Am's bylaws. Perry also asserted that he had been wrongfully "frozen out" of the corporation's affairs, that the corporation owed him $60,000 as a valid debt, and that, over time, Beaulac had wrongfully diverted substantial corporate funds.

Trustee Tomsic determined that Can–Am held valuable real property which, if sold, might realize substantial funds for Beaulac's creditors. She held undisputed title to 25 Can–Am shares, but needed to resolve outstanding issues with Perry and others who claimed to be Can–Am shareholders to effect sale of the corporation's valuable asset.[3] After extensive negotiations, she and they arrived at a stipulation of settlement which provided, among other things, that Can–Am's real estate would be

---

1. Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

2. The 25 scheduled shares, obviously, did not include the additional 48.

3. There was no contest regarding the trustee's title to the 25 shares Beaulac scheduled. Ownership of (or control over) the other 48 shares was disputed by Perry and other Can–Am shareholders.

sold for a determined amount (or more); that the shareholders, including Perry, would not oppose the sale; that Perry would receive a $60,000 distribution from the sale proceeds, with the balance of his claims allowed as a $60,000 unsecured claim against Beaulac's estate. They also agreed that two other purported shareholders would be treated as (Beaulac's) unsecured creditors under a formula whereby they would obtain an initial, early distribution, but then await distributions to other creditors and, ultimately, share pro rata in the estate.

The trustee filed the settlement stipulation in early April 2002, seeking approval from the bankruptcy court. In June 2002, the court authorized the trustee to vote her Can–Am shares in favor of the real estate sale, but her ability to close the sale was stalled while she continued to negotiate the final details of settlement with Perry and others. Hearings on the settlement were continued repeatedly. In December 2002, the trustee sought to amend the settlement stipulation in the face of changed circumstances, including a lately-recorded mortgage (for the benefit of Beaulac or his spouse) against the Can–Am real estate.

The court held a hearing on the stipulation of compromise on December 3, 2002. By that time, the bankruptcy case was nearly three years old. It had been in Chapter 7 for over two years. Beaulac opposed the sale. In a nutshell, he sought to avoid liquidation of Can–Am's real estate. He asked for additional time to locate cash to pay his creditors in full to eliminate the necessity that the land be sold. Beaulac's attorney expressed a lack of confidence in the trustee's ability to liquidate assets efficiently. He stated that

Beaulac had a right to be heard in opposition to the settlement and stated, "It has always been our contention that if the assets *had* been liquidated in a reasonable and timely manner, there *would* have been significant equity left over for my client with which to effectuate his fresh start ...." Transcript of hearing conducted December 3, 2002, at 21 (hereafter Tr. at ___) (emphasis supplied). After articulating specific complaints about the trustee's actions, Beaulac's counsel continued, "[Beaulac's] expectation in this case was that he was going to pay his creditors off and that he was going to have money when he was all over with this case. Three years later we are not very close to paying off his creditors, and we are not very close to Mr. Beaulac realizing his equity in this case. And if the sale of Can–Am takes place, it is just going to cut off all of those things and make this case even more complicated and more uncertain." Tr. at 25.[4]

In the end, the court continued consideration of the settlement one last time to provide Beaulac with an opportunity to stave off the sale of Can–Am's assets. The judge remarked:

The continuance is until December 20[sic]. And Mr. Beaulac has to show me two things: he has to show me, number one, that he has an unconditional commitment for $200,000 from a source that I don't doubt. A sub part of that is I'd like to know that it's not coming from his own personal funds. And second—unless they've been earned since 1999.

And then second, Mr. Beaulac has to show me where in the estate the trustee is going to be able to find sufficient funds to pay the gross amount of all claims filed in the estate, assuming that

---

4. Earlier in the hearing the trustee's counsel had observed that the trustee was "hoping at some point Mr. Beaulac would come up with a proposal that would allow creditors to be paid and avoid the liquidation of assets as they have been happening." Tr. at 19.

the trustee loses the arguments with the other shareholders who have claims against the estate. So if Mr. Beaulac says well, okay, here's $200,000 from this place and here is I don't know, $300,000 in assets that the trustee can go and get without substantial risk,' then I'll seriously consider denying these proposed settlements. But if it isn't that clean—for example, if Mr. Beaulac tells me to find, tells the trustee to find $100,000 or $140,000 and I think it was from somebody who just showed up after six years, then that's not a clean amount of money. Then I don't have any option but to take the Trustee, at least partially out of her misery and allow these settlements to go forward. December 10, 11:00. It's going to be a short hearing, I think.

Tr. at 35–36.

As the hearing came to a close, the court reemphasized that Beaulac would either provide the trustee with firm assurances of sufficient funds to pay all claims, or the settlement would be approved. The judge explained what might happen if Beaulac came up with the funds:

> Well, the suggestion that Mr. Weinberg initiated and then I approved was that Mr. Beaulac has to provide the estate with a source of money in which to pay all the claims in full. Now at that point the trustee has all that money. Now it goes through the claims review process, and if there are claims against Mr. Perry, or offsets against Mr. Perry or offsets against Mr. Small and Mr. Bernier, then we go and we deal with those in the claims review process. They certainly are not going to be paid any more than what they are entitled to. And if that means at the end of the day that the trustee has, say, $450, $500,000 that the claims [turn] out to be $300,000, as a result of final orders on claims objec-

tions, then Mr. Beaulac I suppose gets a return of the balance.

Tr. at 42.

On December 10, Mr. Beaulac having failed to deliver, the court entered orders approving the settlement. This appeal ensued.

## Discussion

### 1. Jurisdiction

■ We have jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a). The order approving the stipulation of settlement is such an order. *See generally Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643 (1st Cir. BAP 1998).

### 2. Scope of Review

■ We review factual findings for clear error and legal conclusions *de novo. Werthen v. Werthen (In re Werthen)*, 329 F.3d 269, 272 (1st Cir.2003). The bankruptcy court's approval of settlements is reviewed for abuse of discretion. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632, 635–36 (1st Cir.), *cert. denied,* 531 U.S. 960, 121 S.Ct. 385, 148 L.Ed.2d 297 (2000).

### 3. Waiver and Appeal

Before us, Beaulac asserts that the bankruptcy court erred by "allowing a $60,000.00 unsecured claim to David Perry despite his never having filed a Proof of Claim or having asserted any other ownership interest ..." and by "allowing a sum of $60,000.00 to be designated as payment for equity to David Perry for his alleged ownership interest in Can Am, Inc., despite his never having filed a Proof of Claim or having asserted any other ownership interest ...." Appellant's Brief at 4–5.

The argument need not detain us long. Although we have combed the record, and although we note Beaulac's steadfast opposition to the settlement's approval, we see no instance in which he cited Perry's failure to file a proof of claim as the reason why it should have been rejected. "This argument was not raised below and is therefore waived." *Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 33 (1st Cir.2003) (quoting *Brigham v. Sun Life of Can.*, 317 F.3d 72, 85 (1st Cir.2003))

### 4. Merits of the Argument

Despite Beaulac's waiver, we have reviewed with some care the record before us, and we conclude that his appeal is not well taken on its merits. We start by examining the bankruptcy court's role in determining whether a settlement proffered by a trustee should be approved.

■ Important to understanding the court's role is the black letter proposition that "[c]ompromises are favored in bankruptcy." *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 n. 5 (1st Cir.1998) (quoting 9 Collier on Bankruptcy ¶ 9019.01, at 9019–2 (15th ed.1995)).

A chapter 7 trustee is entrusted to marshal an estate's assets and liabilities, and proceed in settling its accounts on whatever grounds he, in his informed discretion, believes will net the maximum return for the creditors (on whose behalf he toils). When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously—and an inquiring court must accord him wide latitude should he conclude that the game is not

worth the candle. After all, "a chapter 7 trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause."

*In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d at 634 (citations omitted).

■ Beaulac's position is that a bankruptcy trustee is barred, as a matter of law, from compromising claims with entities who have not filed proofs of claim. It takes little to see the absurdity of his position. To begin, a conscientious trustee is free to recognize trouble on the horizon and deal with it at any time. Before it makes landfall is often preferable to after. Second, under the Chapter 7 distribution scheme, both timely and untimely filed claims are entitled to distributions from the estate. *See* 11 U.S.C. § 726(a)(2) and (3). And a proposal to set distributional priorities to avoid the delay, expense, and uncertainty of litigation would appear to be exactly the type of compromise a trustee might reasonably adopt. Were the formal defect of Perry's failure to file a proof with the court enough to bar the trustee's efforts to deal with his asserted rights, the defect could be easily overcome by such a filing, even if it occurred after the "bar" date.[5]

The First Circuit has provided worthwhile perspective on appeals such as this one:

It is important to note that the interests of the chapter 7 estate, as represented by the chapter 7 trustee, are not coextensive with the interests of the chapter

---

5. Beaulac's arguments are directed to issues concerning Perry's "notice or actual knowledge" of the bankruptcy, the resolution of which could decide whether Perry's claim (if filed) would be subordinated to timely filed

claims. The trustee's compromise avoided litigation of those issues, as well as issues about the certainty and value of Perry's claims.

7 debtor. Securing the settlement in hand surely and directly benefitted the chapter 7 estate and its unsecured creditors, ... whereas it brought no direct financial benefit to the chapter 7 debtor. Conversely, a prolongation of the ... adversary proceeding, as appellants urge, inevitably would entail relinquishment of the settlement in hand in favor of the more amorphous and elusive litigation prospects in the bush.

*Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1146 (1st Cir.1992)(addressing appellate standing). Beaulac's interests differ from those of the estate, whose creditors did not oppose the trustee's settlement. The trustee correctly attempted to compromise a lengthy, looming dispute with Can–Am's shareholders in order to effect an immediate, substantial benefit to the estate. The bankruptcy court did not abuse its discretion in approving it.

### 5. Standing

■ We begin at the beginning: [6] Under the Bankruptcy Code, standing to appeal from a final bankruptcy court order is accorded only to a "person aggrieved." *See In re Thompson (Kowal v. Malkemus),* 965 F.2d 1136, 1142 n. 9 (1st Cir.1992). The "person aggrieved" paradigm, which delimits appellate jurisdiction even more stringently than the doctrine of Article III standing, *see, e.g., In re Alpex Computer Corp. (Nintendo Co. v. Patten),* 71 F.3d 353, 357 n. 6 (10th Cir.1995); *In re H.K. Porter Co. (Travelers Ins. Co. v. H.K. Porter Co.),* 45 F.3d 737, 741 (3d Cir.1995), bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests. *In re Thompson,* 965 F.2d at 1142 n. 9.

*Spenlinhauer v. O'Donnell (In re Spenlinhauer),* 261 F.3d 113, 117–18 (1st Cir.2001)(footnote omitted).

■ A Chapter 7 debtor may be ready to engage in any number of disputes, but within the bankruptcy realm, they may not be his fights to fight.

The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case. *See* 11 U.S.C. §§ 541(a), 704. Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property. *See In re El San Juan Hotel,* 809 F.2d 151, 154–55 (1st Cir.1987); *see also In re Cult Awareness Network, Inc. (Cult Awareness Network, Inc. v. Martino),* 151 F.3d 605, 607 (7th Cir.1998); *In re Richman (Richman v. First Woman's Bank),* 104 F.3d 654, 657 (4th Cir.1997). Thus, normally it is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing to appeal from bankruptcy court orders which confirm or reject sales of property of the estate. *See Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs. (In re Mark Bell Furniture Warehouse, Inc.),* 992 F.2d 7, 10 (1st Cir.1993); *Moneymaker v. CoBen (In re Eisen),* 31 F.3d 1447, 1451 n. 2 (9th Cir.1994).

*In re Spenlinhauer,* 261 F.3d at 118 (footnote omitted).

---

**6.** We recognize that standing is fundamental. We are "duty bound" to consider it. *Spenlinhauer v. O'Donnell (In re Spenlinhauer),* 261 F.3d 113, 118 (1st Cir.2001). Ordinarily we would address it before any discussion of the merits. Here, however, although we view the record adequate to decide the point without remand, the parties did not brief the issue. Given the obviousness of other grounds for deciding the appeal, we have chosen to address those grounds before turning to the standing issue.

Although the order before us is the court's approval of the trustee's settlement with Can–Am shareholders, the governing principles are the same. In essence, Beaulac takes exception to the arrangement encompassing sale of Can–Am's real estate and allowing certain unsecured claims against the estate. Those matters, in turn, dictate the size of the bankruptcy pie and the size and allocation of slices from it. Worth mentioning again is the fact that even *untimely* claims against a bankruptcy estate can receive a dividend, 11 U.S.C. § 726(a)(2) and (3), and that their distributions come ahead of the debtor's right to surplus assets. 11 U.S.C. § 726(a)(5).

A Chapter 7 debtor qualifies as a "person aggrieved" for purposes of appellate standing only if he can demonstrate that defeat of the order on appeal would result in a surplus distribution to him or would affect his bankruptcy discharge. *In re Thompson, supra.* Beaulac has demonstrated neither. *See In re Spenlinhauer,* 261 F.3d at 118 (burden is on appealing debtor). Moreover, the court's comments, as well as those of Beaulac's counsel and Beaulac's own Chapter 11 and Chapter 7 schedules, starkly demonstrate he has no pecuniary interest at stake.[7]

### Conclusion

For all of the reasons set forth above, the bankruptcy court's approval of the settlement proffered by the Chapter 7 trustee is AFFIRMED.

---

7. The court invited Beaulac to locate and tender sufficient funds to pay all claims, in essence offering him a chance to "buy" standing. Without passing on the advisability of such a course, Beaulac did not accept the invitation.