# United States Court of Appeals
## For the First Circuit

No. 20-9003

CALEB NEIRA RIVERA,

Debtor.

CALEB NEIRA RIVERA,

Appellant,

v.

SCOTIABANK DE PUERTO RICO,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Thompson, Dyk,[*] and Barron,
Circuit Judges.

German A. Rieckehoff, for appellant.
Yasmin R. Vázquez Vázquez, with whom Vázquez & Estrella Law
Offices was on brief, for appellee.

September 17, 2021

---

[*]    Of the Federal Circuit, sitting by designation.

THOMPSON, **Circuit Judge**. Chapter 7 debtor Caleb Neira Rivera ("Neira") seeks review of an order issued by the Bankruptcy Appellate Panel for the First Circuit ("BAP") that found he had no standing to appeal a bankruptcy court order overruling his objection to a proof of claim filed by Scotiabank de Puerto Rico ("Scotiabank"). Because we agree with the BAP that Neira has no standing to appeal the bankruptcy court order, we dismiss his appeal for lack of jurisdiction.

## I.   Background

In July 2009, R-G Premier Bank of Puerto Rico ("R-G Bank") initiated a judicial foreclosure action against Neira, his wife Daisy Rodríguez Martínez, and their conjugal partnership in the Puerto Rico Court of First Instance, San Juan Part. See R-G Premier Bank of P.R. v. Neira Rivera, et al., KCD2009-2927 (508). The object of the foreclosure action was the defendants' home, located in the gated community of Paseo San Juan, in San Juan, Puerto Rico ("the Property"), which secured a mortgage note held by R-G Bank. In December 2009, the local court entered a default judgment against the defendants (the "2009 Foreclosure Judgment") in the amount of $821,794.97, plus interest, late fees, costs and attorney's fees. The local court allowed foreclosure.

The following year, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of R-G Bank, and the

-2-

FDIC sold R-G Bank's assets to Scotiabank. Scotiabank then sought to execute on the 2009 Foreclosure Judgment and a judicial sale of the Property was scheduled for October 29, 2012.

Two days before the scheduled judicial sale, on October 27, 2012, Neira filed a chapter 11 petition in the United States Bankruptcy Court for the District of Puerto Rico (the "2012 Bankruptcy Case"), which stayed the judicial sale of the Property. See Petition, In re Neira Rivera, No. 12-08577-ESL (Bankr. D.P.R. Oct. 27, 2012), ECF No. 1. Scotiabank then filed a proof of claim, asserting a claim in the amount of $1,195,033.62 secured by a lien on the Property. Neira filed an objection to Scotiabank's proof of claim, arguing that Scotiabank had not provided evidence of a perfected security interest in the Property. He thus requested that Scotiabank's proof of claim "be disallowed." In his prayer for relief, Neira requested additional remedies, including that "the underlying debt be canceled and forever discharged whether or not the debtor(s) receive their Discharge Order in this case."

On May 15, 2013, the bankruptcy court entered an order granting Neira's objection to Scotiabank's proof of claim (the "2013 Order"). Specifically, the order stated: "Debtor's objection to claim #10 filed by Scotiabank PR (docket entry #47), having been duly notified to all parties in interest, and no timely

replies or objections having been filed, it is now ORDERED that said motion be and it is hereby granted."

In November 2014, Neira moved for voluntary dismissal of the 2012 Bankruptcy Case. The bankruptcy court granted his request and dismissed the case on December 16, 2014. No reorganization plan was ever confirmed in the case and Neira did not receive a discharge.

Following the dismissal of the 2012 Bankruptcy Case, the local court rescheduled the judicial sale of the Property for late July 2015. Shortly before the judicial sale was to take place, on July 22, 2015, Neira filed a new chapter 11 petition in the United States Bankruptcy Court for the District of Puerto Rico (the "2015 Bankruptcy Case"), which again stayed the judicial sale of the Property. See Petition, In re Neira Rivera, No. 15-05590-ESL (Bankr. D.P.R. July 22, 2015), ECF No. 1. In his petition, Neira listed Scotiabank as a creditor with an unsecured claim of $821,794.00. Less than a month later, Neira requested that the 2015 Bankruptcy Case be dismissed. The bankruptcy court granted his request and dismissed the case on September 21, 2015. Like in the 2012 Bankruptcy Case, no reorganization plan was confirmed and Neira did not receive a discharge.

On October 2, 2015, Neira, his wife, and their conjugal partnership filed a complaint in the Puerto Rico Court of First

Instance, San Juan Part, seeking to obtain relief from the 2009 Foreclosure Judgment. See Neira Rivera, et al. v. Scotiabank de P.R., KAC2015-0892 (905). They alleged that Scotiabank was not the mortgage note holder and that the mortgage on the Property had not been properly recorded in the Property Registry. In compliance with a court order, Scotiabank produced the original mortgage note for inspection and a Registry Certification reflecting that the mortgage had been recorded in the Property Registry. Thereafter, the couple failed to prosecute their case and the local court dismissed the complaint for lack of prosecution.

The judicial sale finally took place in October 2016, and Scotiabank acquired the Property. Two years later, in October 2018, Scotiabank sold the Property to third-party purchasers, Inversiones B-Tres, Inc. and Nice Realty Group, LLC (the "Purchasers"). Despite the foreclosure sale and subsequent sale of the Property to the Purchasers, Neira and his wife refused to move out of the Property. Instead, between 2017 and 2018 they filed four different cases (three in local courts and one in the United States District Court for the District of Puerto Rico), seeking to obtain relief from the 2009 Foreclosure Judgment. See Neira Rivera, et al. v. Scotiabank de P.R., SJ2017CV00133 (804); Neira Rivera, et al. v. Scotiabank de P.R., SJ2017CV001196 (904);

-5-

Neira Rivera, et al. v. Scotiabank de P.R., SJ2018CV08924 (907); Neira Rivera, et al. v. Scotiabank de P.R., No. 18-1323-CCC (D.P.R. May 25, 2018). In each case, they contended that the 2013 Order in the 2012 Bankruptcy Case had canceled their debt to Scotiabank and that said order had preclusive effect such that Scotiabank could not execute on the 2009 Foreclosure Judgment or proceed with the judicial sale of the Property. The couple did not prevail in any of those cases.

Facing impending eviction proceedings in local court, on December 11, 2018, Neira filed a chapter 13 petition in the United States Bankruptcy Court for the District of Puerto Rico. See Petition, In re Neira Rivera, No. 18-07219-ESL (Bankr. D.P.R. Dec. 11, 2018), ECF No. 1. Neira listed Scotiabank as an unsecured creditor on his bankruptcy schedules but listed the value of Scotiabank's claim as $0.00 and stated that he was listing it "for due process only[,] debt discharge." On February 19, 2019, Scotiabank filed a proof of claim asserting an unsecured claim in the amount of $893,620.55 based on a "mortgage deficiency" ("Claim 14"). On March 14, 2019, Neira objected to Scotiabank's Claim 14, arguing that his debt to Scotiabank had been "cancelled and/or discharge[d] on May 15, 2013" by virtue of the 2013 Order, which had "preclusive effect," thus "barr[ing] [Scotiabank] from

-6-

submitting [Claim 14]" and foreclosing on the Property despite the dismissal of the 2012 Bankruptcy Case.

Scotiabank replied in April 2019, alleging that its claim had been secured since its inception by a valid, recorded lien on the Property and that it was entitled to assert a deficiency claim for the amount still owed after the judicial sale of the Property. It further argued that the 2013 Order did not annul the 2009 Foreclosure Judgment and that it had no preclusive effect because the 2012 Bankruptcy Case was dismissed "before a payment plan was confirmed or the debt discharged." Scotiabank posited that Neira was once again improperly "disguising an objection to a Proof of Claim, in order to reverse [the 2009 Foreclosure Judgment]," since his four earlier attempts to reverse that judgment had proven unsuccessful both in federal and local courts. The bankruptcy court agreed with Scotiabank and, by order entered on May 20, 2019, overruled Neira's objection to Claim 14 (the "May 20 Order").

While the parties were disputing Scotiabank's Claim 14, in late March 2019, upon Neira's request, the bankruptcy court converted the proceedings to chapter 7 and appointed a chapter 7 trustee. The bankruptcy court also granted the Purchasers relief from the automatic stay to proceed with local eviction proceedings against Neira and his wife.

On May 21, 2019, the chapter 7 trustee filed a Notice of Abandonment of Property, stating that "[t]his [was] . . . a no Asset case" and that he was abandoning all of the estate's interests in non-exempt assets, including Neira's purported interest in the Property. On that same date, the chapter 7 trustee also filed a Report of No Distribution in which he stated that "there [was] no property available for distribution" to creditors. He also noted that the "[c]laims scheduled to be discharged without payment" amounted to $1,410,779.14. Shortly thereafter, Neira moved for a discharge order under 11 U.S.C. § 727, which the bankruptcy court granted.

Neira appealed to the BAP the bankruptcy court's May 20 Order overruling his objection to Scotiabank's Claim 14. The BAP entered an Order to Show Cause directing Neira to address why his appeal should not be dismissed for lack of appellate jurisdiction. Neira filed his response, contending that he had been "aggrieved" by the bankruptcy court's May 20 Order, and thus had appellate standing, because he had possession of the Property and a "colorable claim" against Scotiabank. In his view, he had been "aggrieved by the [May 20] Order" because it "implicitly recognize[d] the existence of a debt that was discharged many years ago" in the 2012 Bankruptcy Case, "validate[d] Scotiabank's re-litigation of the very same issue contested on the merits" in the

-8-

2012 Bankruptcy Case, and "empower[ed] Scotiabank to complete foreclosure proceedings and evict [Neira] from his home to execute on a debt that simply does not exist."

The BAP concluded that Neira did not have appellate standing to challenge the May 20 Order because he had failed to demonstrate that the challenged order had directly or adversely affected his pecuniary interests. Neira Rivera v. Scotiabank de P.R., No. 19-026 (B.A.P. 1st Cir. Oct. 29, 2019). Specifically, the BAP concluded that Neira had not demonstrated "a reasonable possibility" that reversal on appeal of the May 20 Order "w[ould] cause the value of the estate's assets to exceed its liabilities" or "impact the terms of his discharge or the dischargeability of the debt owed to Scotiabank." Id. at 13. The BAP also noted that "it appear[ed] from the record that [Neira's] primary objective in objecting to Scotiabank's claim, and in [his] appeal [to the BAP], [was] to avoid his eviction from property which was foreclosed by Scotiabank in 2016 and sold to third-party purchasers in 2018." Id. at 1. Accordingly, the BAP entered judgment dismissing the appeal. Neira sought reconsideration of the BAP's judgment, which the BAP denied. Neira now appeals from the BAP's decision.

## II. Discussion

It is well-settled that only a "person aggrieved" has standing to appeal from a final bankruptcy court order.

Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001). A litigant qualifies as a "person aggrieved" only if the challenged order "directly and adversely" affects his or her pecuniary interests. Id. at 117-18. This standing requirement is more stringent than the one under Article III because it aims to ensure that bankruptcy proceedings, "with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court," "are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors." In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987); see also Spenlinhauer, 261 F.3d at 117-18.

"The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case." Spenlinhauer, 261 F.3d at 118. It is "[t]he chapter 7 trustee, not the chapter 7 debtor, [who becomes] responsible for collecting all property of the estate and reducing it to money." In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 10 (1st Cir. 1993). Because the chapter 7 debtor no longer holds title to the property of the estate, he "typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property." Spenlinhauer, 261 F.3d at 118. Hence, "normally it

-10-

is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing to appeal from bankruptcy orders" affecting the property of the estate. Id.; see also In re Mark Bell Furniture Warehouse, Inc., 992 F.2d at 10 (explaining that "[a] chapter 7 debtor is not considered a 'person aggrieved,' as [he] lacks a pecuniary interest in the 'property of the estate'" (second alteration in original) (quoting In re Thompson, 965 F.2d 1136, 1144 (1st Cir. 1992))).

This general rule has two exceptions, which will confer standing to a chapter 7 debtor "notwithstanding the fact that he no longer has title to the property." Spenlinhauer, 261 F.3d at 119. First, a chapter 7 debtor may establish standing by adducing sufficient evidence to demonstrate that a successful appeal by the debtor "would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus" once the bankruptcy case is closed. In re Mark Bell Furniture Warehouse, Inc., 992 F.2d at 10 (quoting In re Thompson, 965 F.2d at 1144); see also Spenlinhauer, 261 F.3d at 119; In re El San Juan Hotel, 809 F.2d at 155 n.6. Second, a chapter 7 debtor may demonstrate standing by establishing that the challenged order "would adversely affect the terms and conditions of his chapter 7 discharge." Spenlinhauer, 261 F.3d at 119 n.7 (citations omitted); In re Mark

-11-

Bell Furniture Warehouse, Inc., 992 F.2d at 10; see also In re El San Juan Hotel, 809 F.2d at 155 n.6.

The party asserting appellate jurisdiction -- here, Neira -- bears the burden of proving standing to appeal. Spenlinhauer, 261 F.3d at 118. We review "factual determinations by a lower court of whether a party has standing for clear error." In re Furlong, 660 F.3d 81, 86 n.3 (1st Cir. 2011); see also Spenlinhauer, 261 F.3d at 118 (noting that the "'person aggrieved' determination . . . entails a factual inquiry which we review only for clear error"); In re El San Juan Hotel, 809 F.2d at 154 n.3 (same).

Neira's arguments on appeal are geared toward challenging the merits of the May 20 Order allowing Scotiabank's Claim 14. He devotes a substantial part of his briefs to disputing the validity of the debt that Scotiabank asserted in Claim 14 in light of the 2013 Order entered in the 2012 Bankruptcy Case, and discussing why the doctrine of claim preclusion should have led to the disallowance of Claim 14.[1] The problem with Neira's approach

---

[1] Specifically, Neira argues that regardless of the reasons that Scotiabank might have had for not opposing his objection to Scotiabank's proof of claim in the 2012 Bankruptcy Case, because Scotiabank did not appeal or seek relief from the 2013 Order, "it is forever bound" by it. In Neira's view, the "unequivocal discharge" of his debt to Scotiabank by way of the 2013 Order "bound all other courts . . . and . . . precluded Scotiabank from pursuing any further claims related to that debt," notwithstanding the subsequent dismissal of the 2012 Bankruptcy Case.

is that he focuses on the merits of the May 20 Order but fails to first clear the standing hurdle. He fails to address why he has standing in the first place to challenge the substance of the May 20 Order.

When Neira's case was converted to chapter 7 and a chapter 7 trustee was appointed, he lost "all right, title and interest in nonexempt property of the estate." Spenlinhauer, 261 F.3d at 118. Accordingly, unless Neira can establish that he meets either of the two exceptions for appellate standing in chapter 7 cases, it is only the chapter 7 trustee who has standing to appeal from bankruptcy orders affecting the property of the estate. Id. at 118-19. As the BAP correctly found, Neira failed to establish that either exception applies.

Neira makes no argument, much less establishes, that the reversal of the May 20 Order "would generate assets in excess of liabilities, entitling [him] to a distribution of surplus" once the bankruptcy case is closed. In re Mark Bell Furniture Warehouse, Inc., 992 F.2d at 10. The record is also completely devoid of any evidence showing that the reversal of the challenged order would cause "a total nonexempt-asset valuation exceeding all

---

Accordingly, the bankruptcy court should have disallowed Scotiabank's Claim 14, which was related to the same debt to Scotiabank allegedly discharged in 2013.

allowed claims against the chapter 7 estate" and that Neira would be entitled to the resulting surplus. Spenlinhauer, 261 F.3d at 119. Rather, what the record shows is that the challenged order concerned a claim of $893,620.55, whereas the claims discharged without payment amounted to $1,410,779.14. Thus, even if the challenged order were to be reversed and Scotiabank's Claim 14 disallowed, there is no possibility that it would generate assets in excess of liabilities and create a surplus to which Neira would be entitled.

Nor does Neira argue, let alone establish, that the May 20 Order "adversely affect[ed] the terms and conditions of his chapter 7 discharge." Id. at 119 n.7. The record reveals that Neira received a discharge order in 2019, which included the discharge of his debt to Scotiabank for the mortgage deficiency. The record is devoid of any evidence that the discharge order would be affected by a successful appeal of the May 20 Order. See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d at 10; In re El San Juan Hotel, 809 F.2d at 155.

Despite failing to establish either of the two exceptions -- that is, that the reversal of the May 20 Order would generate a surplus or affect the discharge -- Neira claims to have suffered two grievances that, in his view, arise directly from the May 20 Order.

First, he argues that the May 20 Order undermines his long-standing position in local courts that his debt to Scotiabank is inexistent, thus making it more difficult for him to succeed in local courts. During the past several years, Neira and his wife have sought to obtain relief -- in three local courts and one district court -- from the 2009 Foreclosure Judgment based on their contention that the 2013 Order had canceled their debt to Scotiabank and that it had preclusive effect, thereby preventing Scotiabank from executing on the 2009 Foreclosure Judgment and going on with the judicial sale of the Property. According to Neira, he and his wife were unsuccessful in all four cases because both the state and federal courts failed to understand the couple's arguments and legal contentions. As Neira explained to us, the May 20 Order allowing Scotiabank's claim for mortgage deficiency hinders his chances of success in local courts because it "implicitly recognizes the existence of a debt that was discharged many years ago", allows Scotiabank to relitigate the same issue, and "empowers Scotiabank to complete foreclosure proceedings and evict [him] from his home to execute a debt that . . . does not exist." In his view, reversal of the May 20 Order would help him because it could influence the local courts to accept his argument

that his debt to Scotiabank is inexistent.[2]  But this falls short of meeting the requirement for appellate standing.

It is evident from Neira's argument that the challenged order has no "direct and immediate impact on [Neira's] pecuniary interests."  In re El San Juan Hotel, 809 F.2d at 155 (quoting In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983)).  His contention is that a successful appeal may benefit him to the extent that it may help him persuade the local courts to rule in his favor in separate proceedings in other courts.  Yet, "a debtor, contesting a bankruptcy court order, whose only interest or burden is as a future party [litigant], does not qualify as an 'aggrieved person.'"  Id. (citing In re Fondiller, 707 F.2d at 443).

Second, Neira claims to have been aggrieved by the May 20 Order because of the impending eviction proceedings he is facing in local court.  But the May 20 Order does not "directly and adversely" affect the eviction proceedings.  In fact, the eviction proceedings going on in local court are not tied in any way to the May 20 Order.  Scotiabank's Claim 14 is related to a mortgage deficiency that arose in October 2016, after the judicial sale of the Property, and not to the validity of Scotiabank's security interest in the Property.  The eviction proceedings, however, were

---

[2]  In his words, "the present appeal is a head-on attempt to correct/rectify said judgments."

-16-

initiated because third-party purchasers acquired the Property in October 2018 and have been unable to take possession of it due to Neira and his wife's refusal to leave the Property. Even if Claim 2014 is disallowed, it would not have a "direct" effect in the eviction proceedings, as required by our case law. And, to the extent that Neira's argument is that reversal of the May 20 Order may put him in a better position to defend himself in the eviction proceedings, that too is insufficient to make him an "aggrieved person." See id. (determining that a debtor whose "only demonstrable interest in the order [was] as a potential party defendant in an adversary proceeding" did not qualify as a "person aggrieved" (quoting In re Fondiller, 707 F.2d at 443)).

Finally, Scotiabank asks for sanctions under First Circuit Local Rule 38.0, saying that Neira's conduct has been "vexatious." It submits that Neira "has used the judicial system to intentionally delay the eviction of his property for which Judgment was issued in 2009 and which was foreclosed in 2016." Scotiabank notes that Neira has filed eight cases and reopened the 2009 foreclosure case with a request for relief from the 2009 Foreclosure Judgment and, although he has not prevailed in any on them, he has "forc[ed] Scotiabank to engage in litigation in nine separate cases."

First Circuit Local Rule 38.0 authorizes sanctions for "vexatious litigation," where a party or attorney "files a motion, brief, or other document that is frivolous or interposed for an improper purpose, such as to harass or to cause unnecessary delay, or unreasonably or vexatiously increases litigation costs." Vexatious behavior is "conduct displaying a 'serious and studied disregard for the orderly process of justice.'" Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 34 (1st Cir. 2008) (quoting Cruz v. Savage, 896 F.2d 626, 631-32 (1st Cir. 1990)).

The conduct complained of by Scotiabank did not occur in the context of the present appeal. The only allegation related to this appeal is Scotiabank's suggestion that Neira appealed to delay the eviction proceedings, but the record reflects that the Purchasers obtained a relief from the stay to proceed with the local eviction proceedings in 2019. Thus, the appeal could not have delayed those proceedings. And, although Local Rule 38.0 authorizes sanctions not only for vexatious litigation conduct but also for frivolous appeals, see In re Efron, 746 F.3d 30, 37-38 (1st Cir. 2014), Scotiabank's request for sanctions is not premised on any claim that the appeal was frivolous. Absent an argument from Scotiabank to that effect, we refuse to conclude that Neira's weak appeal was frivolous. See id. (noting that "'weak' is not synonymous with 'frivolous'" and an "appeal can be weak, indeed

-18-

almost hopeless, without being frivolous" (quoting <u>Lallemand</u> v. <u>Univ. of R.I.</u>, 9 F.3d 214, 217-18 (1st Cir. 1993))); <u>see</u> <u>also</u> <u>In re Lorenzo</u>, 637 F. App'x 623, 623-24 (1st Cir. 2016) (explaining that "[a]n appeal is frivolous if the arguments in support of it are wholly insubstantial and the outcome is obvious from the start" (quoting <u>In re Efron</u>, 746 F.3d at 37)).  We clarify, however, that our denial of sanctions should not be construed as an endorsement of Neira's decision to appeal.

## III.  <u>Conclusion</u>

For the foregoing reasons, we dismiss the appeal for want of jurisdiction.  Costs shall be taxed against the appellant.