**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. MB 22-041**

---

**Bankruptcy Case No. 22-11302-JEB**

---

**SERGE OHANNES KARAMOUSSAYAN,**
**Debtor.**

---

**SERGE OHANNES KARAMOUSSAYAN,**
**Appellant,**

**v.**

**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Janet E. Bostwick, U.S. Bankruptcy Judge)**

---

**Before**
**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge.**
**Harwood and González, U.S. Bankruptcy Appellate Panel Judges.**

---

**David G. Baker, Esq., on brief for Appellant.**
**Stephen G. Murphy, Esq., on brief for Appellee.**

---

**April 11, 2024**

---

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge.**

This appeal arises from the bankruptcy court's order overruling the objection filed by Serge Ohannes Karamoussayan (the "Debtor") to the proof of claim filed by the Massachusetts Department of Revenue (the "MDOR"). Because the Debtor lost standing to appeal the order when his chapter 13 case was converted to one under chapter 7, we **DISMISS** this appeal for lack of jurisdiction.

## BACKGROUND[1]

The Debtor, who owned and operated a jewelry business in Boston, Massachusetts, filed a chapter 13 bankruptcy petition in September 2022. The Debtor's bankruptcy schedules reflected that he co-owned real property valued at $875,000 (the "Property") and that his interest in the Property was worth $437,500. His other assets consisted of $17,975 in personal property.

## I.     Order Overruling Debtor's Objection to MDOR's Proof of Claim

The MDOR filed a proof of claim for unpaid taxes in the total amount of $24,031 (the "MDOR Claim"), consisting of a $14,933 secured claim (the "Secured Tax Claim"), an $8,370 priority unsecured claim, and a $726 general unsecured claim. The Debtor objected to the MDOR Claim (the "Claim Objection"), challenging the MDOR's classification of the Secured Tax Claim as secured. He did not, however, dispute the validity or amount of the debt underlying the Secured Tax Claim. In response, the MDOR explained that the debt was secured by statutory tax liens on all the Debtor's assets and that, based on the Debtor's asserted value of his assets, the Secured Tax Claim was fully secured under § 506(a). Therefore, the MDOR contended, it held an allowed secured claim in the amount of $14,933.

---

[1] Unless otherwise indicated, all references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. Dollar figures are rounded down to the nearest dollar.

At a non-evidentiary hearing on the Claim Objection, the bankruptcy court issued a preliminary ruling from the bench as follows:

> I'm satisfied by what was filed in response [to the Claim Objection] that the Commonwealth holds a lien. To the extent there is value in the assets of the Debtor, a portion of it's secured by the residen[c]e, a portion of it is secured by the [other assets]. . . . [I]t is a secured lien.
>
> . . . I believe that the Commonwealth has provide[d] sufficient detail in response. And so based on that I would overrule the objection. I believe the response by the Commonwealth has given the Debtor whatever information is needed.

After the Debtor's counsel declined to offer any further substantive argument in support of the Claim Objection, the court then ruled: "[T]he Debtor asked that the Court determine whether it was secured and priority and the Debtor's offered nothing to show that it wasn't a secured claim and a priority claim. . . . I will overrule the objection."

After the hearing, the bankruptcy court entered an order overruling the Claim Objection (the "Order"). This appeal followed.

## II.     Conversion to Chapter 7 and Other Subsequent Events

In March 2023, while this appeal was pending, the bankruptcy court entered an order converting the Debtor's chapter 13 case to one under chapter 7 for cause under § 1307(c).[2] After the conversion, a chapter 7 trustee was appointed; he did not seek to be substituted as the appellant in this appeal. In August 2023, the court issued a notice indicating there might be sufficient funds to pay unsecured creditors a dividend and directing creditors seeking a distribution to file a proof of claim by November 15, 2023. Prior to the expiration of the deadline, nine claims totaling more than $1,111,000 were filed, including: (1) the MDOR Claim;

---

[2] On February 12, 2024, the Panel affirmed the conversion order. See Karamoussayan v. Mass. Dep't of Rev. (In re Karamoussayan), BAP No. MB 23-007, slip op. (B.A.P. 1st Cir. Feb. 12, 2024); see also TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n.1 (B.A.P. 1st Cir. 2014) (stating Panel "may take judicial notice of the bankruptcy court's docket and imaged papers").

(2) a $524,073 secured claim filed by U.S. Bank, N.A. ("U.S. Bank"), as the holder of a first-priority mortgage lien on the Property; and (3) a $2,757 priority unsecured claim filed by the Internal Revenue Service (the "IRS").

In July 2023, the Debtor filed Amended Schedules A/B and C. On his Amended Schedule A/B, the Debtor listed his 50% interest in the Property, worth $437,500, and personal property valued at $65,012. On his Amended Schedule C, the Debtor claimed a $250,000 homestead exemption and $12,450 in personal property exemptions. The Debtor filed another Amended Schedule A/B on January 25, 2024, listing the same assets, but reducing the value of his business inventory from $12,500 to $985, leaving the estate with about $43,000 in nonexempt personal property assets (the "Nonexempt Assets").[3]

In November 2023, the bankruptcy court granted U.S. Bank relief from the automatic stay to foreclose its mortgage on the Property and apply any sale proceeds "to the loan balance secured by such mortgage."[4]

### III.    Supplemental Briefing on Appellate Standing

After the parties filed their principal briefs, the Panel directed them to file supplemental briefs addressing whether the Debtor, as a chapter 7 debtor, has standing to appeal the Order.

In his supplemental brief, the Debtor argues he has standing to appeal because the court's determination that the MDOR Claim is partially secured by tax liens on the Property negatively

---

[3] The Debtor did not file another amended Schedule C to reduce his claimed exemption for the inventory from the $2,975 statutory limit to the decreased value of $985. Nonetheless, as the amended value of the business inventory is now less than the statutory limit, we treat the inventory as fully exempt for purposes of our standing analysis.

[4] The record does not reflect the status of any foreclosure proceeding by U.S. Bank. Nor does it reflect the amount of administrative claims against the estate, whether the nonexempt personal property assets have been liquidated (and, if so, how much is available for distribution to creditors), or whether any distributions to creditors have been made.

impacts his pecuniary interests. The Debtor contends that because there is equity in the Property, he would be entitled to recover his 50% share of that equity—up to $250,000—on account of his homestead exemption if U.S. Bank were to foreclose its mortgage and sell the Property. Thus, he asserts, because all valid liens against the Property (including the MDOR's $14,933 tax lien) would have to be paid before he would receive his share of the equity, he would receive $14,933 *more* of the sales proceeds if it were determined the MDOR did *not* have a valid tax lien.

The MDOR counters that the Debtor lacks appellate standing as a chapter 7 debtor because he cannot demonstrate that reversal of the challenged order would either result in a surplus that would revert to him or would affect his discharge. The MDOR emphasizes that because the Debtor only challenged the secured status of its claim, and not its validity, reversal would not result in a surplus because the Secured Tax Claim must first be paid whether it is a secured, priority unsecured, or general unsecured claim. The MDOR also argues that the Order does not adversely affect the Debtor's discharge, because Massachusetts sales tax debts are categorically excepted from discharge, regardless of whether they are secured or unsecured.

### APPELLATE STANDING

"Standing is a jurisdictional element which cannot be waived and can be raised at any time." Cundiff v. Cundiff (In re Cundiff), 227 B.R. 476, 478 (B.A.P. 6th Cir. 1998) (citation omitted); see also Great Rd. Serv. Ctr., Inc. v. Golden (In re Great Rd. Serv. Ctr., Inc.), 304 B.R. 547, 550 (B.A.P. 1st Cir. 2004) ("[Q]uestions of standing must be considered sua sponte, as it is akin to subject matter jurisdiction.") (citation and internal quotation marks omitted). If the appellant lacks standing to bring an appeal, then the Panel lacks jurisdiction to decide it upon its merits. Zambrana Arroyo v. Scotiabank de P.R. (In re Zambrana Arroyo), 489 B.R. 486, 488 (B.A.P. 1st Cir. 2013) (citing United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992)).

5

Because the Debtor's bankruptcy case was converted to one under chapter 7 while this appeal was pending, we must consider whether the Debtor has been divested of standing to appeal the Order, depriving us of jurisdiction to review the Order.

## I. The Standard for Determining Appellate Standing

### A. "Person Aggrieved" Standard

It is well-settled in the First Circuit that only a "person aggrieved" has standing to appeal from a final bankruptcy court order. Neira Rivera v. Scotiabank de P.R. (In re Neira Rivera), 14 F.4th 60, 66 (1st Cir. 2021) (quoting Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001)).[5] "A litigant qualifies as a 'person aggrieved' only if the challenged order 'directly and adversely' affects his or her pecuniary interests." Id. (quoting Spenlinhauer, 261 F.3d at 117-18). "Thus, a party asserting standing must demonstrate that the bankruptcy court's order either diminishes his property, increases his burdens, or detrimentally affects his rights." In re Zambrana Arroyo, 489 B.R. at 488 (citations omitted). "To be directly affected by the order, the appellant's pecuniary interests . . . cannot be merely contingent or speculative." Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 459 (B.A.P. 1st Cir. 2017); see also Orion Fitness Grp., LLC v. River Valley Fitness One Ltd. P'ship, No. Civ. 03-474-JD, 2004 WL 524430, at *1 (D.N.H. Mar. 17, 2004) (citing Davis v. Cox, 356 F.3d 76, 93 n.15 (1st Cir. 2004); Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 742-43 (3d Cir. 1995); In re El San Juan Hotel, 809 F.2d 151, 154-55 (1st Cir. 1987)); Gentile v. DeGiacomo (In re Gentile),

---

[5] We are mindful that some courts of appeals have questioned whether the "person aggrieved" test for determining bankruptcy appellate standing remains viable in the wake of Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) (raising prudential standing concerns when determining standing under the Lanham Act). See, e.g., Smith v. Terry (In re Salubrio, L.L.C.), No. 22-50453, 2023 WL 3143686, *5 (5th Cir. Apr. 28, 2023) (Oldham, J., dubitante) (citing cases). In the First Circuit, however, the "person aggrieved" test as articulated in Neira Rivera remains controlling law.

492 B.R. 580, 585 (B.A.P. 1st Cir. 2013) (rejecting debtors' assertion of standing based on "a likely, [but] still contingent, pecuniary interest") (citations and internal quotation marks omitted).

**B.    Standing for Chapter 7 Debtors**

In chapter 7 cases, "'normally it is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing to appeal from bankruptcy orders' affecting the property of the estate." In re Neira Rivera, 14 F.4th at 66 (quoting Spenlinhauer, 261 F.3d at 118) (other citation omitted). "The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case." Id. (quoting Spenlinhauer, 261 F.3d at 118). "Because the chapter 7 debtor no longer holds title to the property of the estate, he 'typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.'" Id. (quoting Spenlinhauer, 261 F.3d at 118).

The First Circuit recognizes two exceptions to the general rule that only the chapter 7 trustee has standing to appeal from bankruptcy court orders affecting estate property. Id. "First, a chapter 7 debtor may establish standing by adducing sufficient evidence to demonstrate that a successful appeal by the debtor 'would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus' once the bankruptcy case is closed." Id. (citations omitted). "Second, a chapter 7 debtor may demonstrate standing by establishing that the challenged order 'would adversely affect the terms and conditions of his chapter 7 discharge.'" Id. at 67 (quoting Spenlinhauer, 261 F.3d at 119 n.7) (other citations omitted). Ultimately, "[t]he party asserting appellate jurisdiction . . . bears the burden of proving standing to appeal." Id. (citing Spenlinhauer, 261 F.3d at 118). "If the debtor fails to present concrete evidence that either exception applies, he does not have

standing to challenge a bankruptcy court order." Simon v. Amir (In re Amir), 436 B.R. 1, 10 (B.A.P. 6th Cir. 2010) (citation omitted).

Here, when the Debtor's case was converted to chapter 7 and a trustee was appointed, the Debtor lost all right, title and interest in nonexempt property of the estate. See Spenlinhauer, 261 F.3d at 118. Accordingly, under the standard articulated by the First Circuit in Neira Rivera, unless the Debtor can establish that he "meets either of the two exceptions for appellate standing in chapter 7 cases, it is only the chapter 7 trustee who has standing to appeal" from the Order. In re Neira Rivera, 14 F.4th at 67 (ruling that chapter 7 debtor who failed to establish either of exceptions lacked standing to appeal order overruling his claim objection); see also Melo v. Dziedzic (In re Melo), BAP No. MW 22-043, 2023 WL 2128300, at *3-4 (B.A.P. 1st Cir. Jan. 13, 2023) (following Neira Rivera and dismissing appeal by chapter 7 debtor on standing grounds).

## II. Applying the Standard for Chapter 7 Debtor Standing

### A. The Debtor Has Not Demonstrated that Reversal of the Order Would Result in a Surplus

We must first consider whether the Debtor has shown that reversal of the Order would generate a surplus, to which he would be entitled. "A 'surplus' in th[is] context . . . is 'something to distribute to the [debtor] after payment of priority claims and expenses, timely and untimely claims, fines and penalties, and interest on all of these items.'" Shelnut v. Overstreet, No. 4:22-cv-141, 2023 U.S. Dist. LEXIS 54265, at *12 (S.D. Ga. Mar. 28, 2023) (citations omitted). To demonstrate he would be entitled to a surplus, the Debtor must show that reversal of the Order would result in "a total nonexempt-asset valuation exceeding all allowed claims against the chapter 7 estate . . . ." Spenlinhauer, 261 F.3d at 119 (citation omitted). The Debtor "cannot simply claim that there is a theoretical chance of a surplus in

8

the estate, but must show that such surplus is a reasonable possibility." In re Amir, 436 B.R. at 10 (citation and internal quotation marks omitted).

The Debtor has not attempted to demonstrate that reversal of the Order would result in the value of his Nonexempt Assets exceeding the amount of the allowed (or allowable) claims against his estate. In any event, he would be hard-pressed to do so. The Debtor's last amended schedules list Nonexempt Assets of about $43,000. Creditors (excluding U.S. Bank) have submitted claims totaling more than $587,000. It is undeniable that the liabilities to be paid through the bankruptcy case far exceed the Nonexempt Assets available to pay them.[6]

Further, on this record there is no possibility that reversal of the Order would result in a surplus of Nonexempt Assets to distribute to the Debtor. As the Debtor has not disputed the validity or the amount of the tax debt, reversal of the Order would merely result in reclassification of the Secured Tax Claim as a priority unsecured claim, not disallowance of the claim. See 11 U.S.C. § 507(a)(8). Regardless of whether the Secured Tax Claim is classified as secured or priority unsecured, it would have to be fully paid before the Debtor would receive a distribution. See 11 U.S.C. § 726(a)(6) (providing that, under the chapter 7 distribution scheme, debtors are paid last, after all claims are paid); see also Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 457 (2017) (explaining bankruptcy distribution scheme). On this record, there is no real prospect that reclassification of the Secured Tax Claim as a priority unsecured claim would result in any reduction of liabilities, let alone cause nonexempt assets to *exceed* liabilities. In short, the Debtor has failed to establish that reversal of the Order would result in a surplus to which he would be entitled.

---

[6] U.S. Bank's secured claim and the Debtor's 50% interest in the Property are not included in this analysis because U.S. Bank has been granted relief from stay to foreclose on the Property and, therefore, the trustee will not be administering the Debtor's interest in the Property or paying U.S. Bank's claim through estate assets.

**B.    The Debtor Has Not Demonstrated that the Order Adversely Affects
His Discharge**

Turning to the second exception for establishing chapter 7 debtor standing, the Debtor

has not argued—let alone demonstrated—that the Order adversely affects his chapter 7

discharge.  The MDOR asserts, and the Debtor does not dispute, that the Secured Tax Claim

arises from undisputedly nondischargeble sales tax debts under §§ 523(a)(1)(A) and 507(a)(8).

As such, MDOR's claim is nondischargeable whether it is classified as a secured claim or a

priority unsecured claim, and the Order has no impact on the Debtor's overall discharge of his

nonpriority unsecured debts.

**C.    The Debtor's Cursory Argument About His Pecuniary Interests**

Despite his failure to argue or establish that he falls within the scope of either of the two

standing exceptions, the Debtor nonetheless asserts standing on the grounds that the court's

determination that the MDOR Claim is partially secured by tax liens on the Property negatively

impacts his pecuniary interests.  He contends that because there is equity in the Property,

he would be entitled to recover his 50% share of that equity, up to $250,000, on account of his

homestead exemption if U.S. Bank were to foreclose its mortgage and sell the Property.  The

Debtor argues that all recorded valid liens against the Property (including the MDOR's $14,933

tax lien) would have to be paid before he would receive his share of the equity and, therefore, he

would receive $14,933 more of the sales proceeds if the court determined that the MDOR did *not*

have a valid tax lien and the claim were recharacterized as unsecured.

The Debtor's argument, however, ignores two important factors: the Secured Tax Claim

is (1) nondischargeable and (2) also secured by his personal property assets.  Consequently,

while the Secured Tax Claim might be paid from the proceeds of a foreclosure sale of the

Property, it could also be paid through the bankruptcy estate from sale proceeds of the

Nonexempt Assets, depending on which sale occurs first. Significantly, as the MDOR is the only creditor who has asserted a lien against the Nonexempt Assets, its Secured Tax Claim would be paid first from the liquidation of those assets, thereby reducing or eliminating the Debtor's post-bankruptcy liability for such tax debt. See Stubbs & Perdue, P.A. v. Angell (In re Anderson), 811 F.3d 166, 168 (4th Cir. 2016) ("The general rule in bankruptcy is that secured claims are satisfied from the collateral securing those claims prior to any distributions to unsecured claims. Secured claims, in other words, take priority.") (citations omitted). The record before us shows about $43,000 in Nonexempt Assets, so it is entirely possible there would be sufficient funds in the bankruptcy estate to satisfy both the Secured Tax Claim ($14,933) and the other nondischargeable priority claims (the MDOR's $8,370 priority tax claim, the IRS's $2,757 priority tax claim, and administrative claims). In this event there would be no negative impact on the Debtor's pecuniary interests at all.[7]

Moreover, even if the $14,933 Secured Tax Claim were to be paid from the Debtor's share of the equity after a foreclosure sale, reducing the amount of funds to which the Debtor would be entitled on account of his homestead exemption, it is far from certain that the net result would negatively affect the Debtor's financial interests. For example, if the Secured Tax Claim

_____

[7] For example, if the Nonexempt Assets were liquidated before the foreclosure sale and the proceeds were sufficient to pay the Secured Tax Claim and all priority claims, there would be no impact on the Debtor's pecuniary interests as the Secured Tax Claim would be paid in full through the bankruptcy estate regardless of its secured or priority status, with no effect on the Debtor's distribution from a foreclosure sale, and leaving the Debtor with no post-discharge liability. Even if there were insufficient proceeds from the Nonexempt Assets to pay all such claims, the prospects for full or substantial payment of the Secured Tax Claim would be greater if the claim were secured than if its status were unsecured priority. This is because the Secured Tax Claim would be paid first if it were classified as secured, but if the claim were reclassified as unsecured priority, administrative claims would be paid first and then the MDOR's and the IRS's unsecured priority tax claims would be paid a pro rata distribution from the balance of the proceeds. In this scenario, the Debtor would be in a better financial position if the Secured Tax Claim remained classified as a secured claim.

were paid from the proceeds of the foreclosure sale, the proceeds of Nonexempt Assets available for distribution to other holders of priority and nondischargeable claims would be that much greater, thereby reducing or eliminating the Debtor's post-discharge liability for those claims.[8] It is apparent then that any potentially adverse impact on the Debtor's pecuniary interests is contingent on the outcome of a variety of scenarios, including: (a) whether the Secured Tax Claim is paid from foreclosure sale proceeds or from the sale proceeds of the Nonexempt Assets; (b) the amount of Nonexempt Assets sale proceeds available for distribution; and (c) the amount of administrative claims (which would be paid ahead of priority tax claims).

Because there are so many contingencies and variables, the Debtor cannot meet his burden of establishing that the Order has a "direct" adverse impact on his pecuniary interests. See In re Neira Rivera, 14 F.4th at 66. For the Order to directly and adversely impact the Debtor's pecuniary interests, at least two conditions must occur: (1) the foreclosure sale of the Property would have to happen before liquidation of the Nonexempt Assets so that the Secured Tax Claim is paid from foreclosure sale proceeds, reducing the amount the Debtor would recover on account of his homestead exemption; and (2) the Nonexempt Assets would have to be sufficient to pay the Secured Tax Claim plus all other priority claims so that the Debtor is not left

---

[8] Under the scenario posited by the Debtor, if the Secured Tax Claim were reclassified as an unsecured priority claim, the Debtor might receive $14,933 more in funds from a foreclosure sale of the Property on account of his homestead exemption. But the flip side is that if there were insufficient funds from the Nonexempt Assets to pay the MDOR's claim as reclassified, that claim would not be paid through the bankruptcy estate and the Debtor would remain liable for this nondischargeable debt after completion of the bankruptcy case. In that event, the net financial effect on the Debtor would be zero. He would receive $14,933 more from the proceeds of the foreclosure sale, but he would still have to pay the nondischargeable tax debt in that amount. Even if there were sufficient funds from the Nonexempt Assets to pay the MDOR's unsecured priority claim, if reclassified, a financial benefit to the Debtor is far from certain. Although he would theoretically receive $14,933 more from the foreclosure sale proceeds and MDOR's Secured Tax Claim would be paid (in whole or part) through the bankruptcy estate, there would be $14,933 less in proceeds from the liquidation of the Nonexempt Assets available to pay his other priority nondischargeable claims, leaving potential post-discharge liability on those debts.

12

with any post-discharge liability on those debts. While the Debtor focuses on the first part of this scenario, he fails to address the second part, ignoring the chapter 7 distribution scheme, the nondischargeable nature of his tax debts, and their impact on the pecuniary interest analysis. Cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (recognizing that it is not the court's job to "do counsel's work, create the ossature for the argument, and put flesh on its bones").

Based on this record, the Debtor is several "steps removed from any possible diminution" of his property. Cf. Travelers Ins. Co., 45 F.3d at 742 (concluding there was no standing under analogous circumstances); see also NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Cap. Mgmt., L.P.), 74 F.4th 361, 367 (5th Cir. 2023) (recognizing that "speculative prospect of harm is far from a direct, adverse, pecuniary hit," particularly where many "different 'ifs' must come to pass" for the order to impact the appellant). Although U.S. Bank has been granted relief from the automatic stay to foreclose on the Property, there is no indication in the record before us that a foreclosure has occurred, or when it may occur. Further, any actual hit to the Debtor's pecuniary interests is also contingent upon the amount of the proceeds from the sale of the Nonexempt Assets available for payment of administrative claims and distribution to creditors.

We conclude, therefore, that any adverse financial impact that the Order may have on the Debtor is, at this juncture, purely speculative and contingent upon the occurrence of several events. "[C]ontingent or speculative harm has never been enough in this circuit to satisfy the requirement of appellate standing." Blackstone Inv. Partners, LLC v. Arcuri (In re Krowel), 631 B.R. 277, 283 (B.A.P. 1st Cir. 2021) (citing In re Cousins Int'l Food, Corp., 565 B.R. at 459). The bottom line is that the Debtor has failed to establish that he has been "directly and

adversely" harmed by the Order.  Consequently, the Debtor is not a person aggrieved by the Order and lacks appellate standing to challenge it.

## **CONCLUSION**

As the Debtor has not demonstrated he has standing to appeal the Order, this appeal is **DISMISSED** for lack of jurisdiction.  A separate judgment shall enter.